COUNTY OF RAMSEY *vs*. CHURCH OF THE GOOD SHEPHERD.

January 12, 1891.

**Taxes—Exemption of Church Property.**—In the clause of section 3, art. 9, of the constitution, providing that "all churches, church property used for religious purposes, and houses of worship" shall by general laws be exempt from taxation, the words "church property used for religious purposes," if they refer to land and buildings, do not intend any except those whose primary use is for religious purposes.

**Same—Parsonage not Exempt.**—A rectory or parsonage belonging to a church society, its primary use being for a secular purpose, to wit, the residence of the priest or minister, is not exempt because of some part of it being also used for religious services.

Case certified from the district court for Ramsey county, after trial before *Brill,* J., and judgment ordered for plaintiff, in proceedings to enforce payment of taxes against land of defendant occupied and used as stated in the opinion.

*James J. Egan,* for plaintiff.

*H. J. Horn, C. E. Flandrau,* and *J. B. Jett,* for defendant.

GILFILLAN, C. J.    This court has decided in two cases that a rectory or parsonage belonging to a church society is not exempt from taxation. *St. Peter's Church* v. *County of Scott,* 12 Minn. 280, (395;) *County of Hennepin* v. *Grace,* 27 Minn. 503, (8 N. W. Rep. 761.) That question is therefore no longer open. The court has also adopted and acted upon and applied to this class of cases the rule of construction that a constitution or legislative act granting privileges, exemptions, or immunities not enjoyed by the community at large shall be strictly construed, and not held to extend beyond the plain requirements of the law itself. It was applied in the case first above cited, and ever since whenever occasion required, including *County of Hennepin* v. *Bell,* 43 Minn. 344, (45 N. W. Rep. 615,) the last case in which a similar exemption was claimed. But it is urged that in this case the rectory is put to such uses as to bring it within the description of "church property used for religious purposes" in section 3, art. 9, of the constitution, under which the exemption is claimed,

because, while it is chiefly used as a dwelling for the rector, which, as said in the case in 27 Minn. is only a secular use, it is also used for various purposes connected with the church and the school maintained by it. The church and school-building stand upon one lot, and the rectory on another; the school-building and rectory are connected by a covered passage-way or corridor. The school children are taken for morning prayers into the rectory, instead of into the church; the sewing society of the church sometimes meets in the rectory; the rector hears there recitations by classes from the school; Sunday-school teachers meet there. The terms used in the statute of exemptions are, "houses used exclusively for public worship, and the lot or parts of lots upon which such houses are erected." Gen. St. 1878, c. 11, § 5.

Assuming, without deciding, that the section of the constitution we have referred to is self-executing,—that is, that it operates to exempt the property specified in it, without any legislation pursuant to it,—then the question might be suggested, do the words we have quoted from the section refer to land or buildings? The entire phrase relating to church property is, "all churches, church property used for religious purposes, and houses of worship." The question suggests itself, do the words, "church property used for religious purposes," refer to buildings, or to anything but personal property? If they include buildings, the words "churches" and "houses of worship" are superfluous. Conceding, however, that those words do include land and buildings, how is the character of the building to be determined? Is it enough to give a building the character of exempt property that, although the ordinary use to which it is put may be secular, it is sometimes used for some religious purposes? If so, a church society owning a dozen buildings besides its church, each of them devoted to secular business, might exempt each from taxation by holding in some part of it a church meeting of some kind, say once a year, or once a month, or once a week, or by its tenant of each holding in it family religious services. Certainly the statute excludes that, and it is not to be supposed that the constitution intended it might be done. The only way to avoid it is to apply the test which the court below appears to have adopted, and determine the question of exemption upon the

primary use to which the property is put. Applying that test, if a building be primarily—that is, principally and generally—used for religious purposes, it will not lose its character as a religious building by some part of it being incidentally used for some secular purpose connected with the church,—as if in the church building a room should be used for business meetings of the corporation, or as a lodging-room for a sexton or some person employed about the church building; and it would not possess the character necessary to exempt it merely because some part of it should be used for religious purposes, while its primary and chief use was for secular purposes. The building in this case was primarily used for a secular purpose, to wit, as a dwelling for the rector, and is liable to taxation. The decision of the court below is affirmed.