## STATE v. BISHOP SEABURY MISSION.[1]

· June 26, 1903.

Nos. 13,428—(119).

**Taxation—"Seminary of Learning."**

> Defendant, a corporation organized under and pursuant to the statutes of this state as an educational institution, and a "seminary of learning," within the meaning of section 3, article 9, of the state Constitution, has certain endowments, aggregating something like $275,000, which are invested in farm mortgages, the income from which is devoted exclusively to its maintenance and support. *Held*, that the endowment fund is exempt from taxation, within section 3, article 9, of the Constitution.

In proceedings in the district court for Rice county to enforce payment of personal property taxes for the year 1901, defendant Bishop Seabury Mission interposed an answer, claiming exemption from taxation under the provisions of section 3, article 9, of the Constitution of Minnesota. The case was tried before Buckham, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*William W. Pye*, County Attorney, for appellant.

The provisions of the Constitution and statute will be strictly construed, and when a doubt exists it will be construed in favor of the state and against the exemption. St. Peters Church v. Board of Co. Commrs., 12 Minn. 280 (395); County of Hennepin v. Bell, 43 Minn. 344; County of Ramsey v. Church of Good Shepherd, 45 Minn. 229; Nelson v. St. Paul Title Ins. & T. Co., 64 Minn. 101; Cincinnati v. State, 19 Ohio, 110; Boston v. City, 129 Mass. 180; Hibernian v. Kelly, 28 Ore. 173; Chicago, B. & K. C. R. Co. v. Guffey, 120 U. S. 569; City v. Rising Virtue, 73 Me. 428; County v. Sisters, 48 Md. 34; Presbyterian v. People, 101 Ill. 578; Cooley, Taxn. 204; 1 Desty, Taxn. 134; 12 Am. & Eng. Enc. (2d Ed.) 302.

, Respondent is not an institution of purely public charity because: (1) Its real business is·that of a seminary of learning for which a

1 Reported in 95 N. W. 882.

particular exemption is provided by the Constitution; (2) it is not a free institution, but derives a certain revenue from the business of education which it carries on, of sufficient amount to bar those of the public who should be the objects of charity; (3) its charities are confined to a particular class or denomination and not to the public generally. County of Hennepin v. Brotherhood of Church of Gethsemane, 27 Minn. 460; Attorney General v. Common Council, 113 Mich. 388; Philadelphia v. Masonic, 160 Pa. St. 572; City v. Rising Virtue, supra.

Neither as a seminary of learning nor as an institution of purely public charity would respondent be exempt from taxation on this property or any property used directly for profit. State v. Pioneer S. & L. Co., 63 Minn. 80.

The exemption goes to the property itself and the right to exemption is determined with reference to the exclusive use made of the property. Pierce v. Inhabitants, 2 Cush. 611; Trustees v. City, 120 Mass. 212; Cleveland v. Pelton, 36 Oh. St. 253; St. Josephs v. Assessors, 12 R. I. 19; Cincinnati v. State, supra; City v. St. Patricks, 28 La. An. 512; Hibernian v. Kelly, supra; St. Marys v. Crowl, 10 Kan. 442; Vail v. Beach, 10 Kan. 214; Washburn v. Commrs., 8 Kan. 344; County v. Sisters, 48 Md. 34; Baltimore v. Baltimore, 50 Md. 437; People v. Graceland, 86 Ill. 336; People v. Theological, 174 Ill. 177; Theological v. People, 189 Ill. 439; Fort v. County, 56 Iowa, 34; County of Hennepin v. Brotherhood of Church of Gethsemane, supra; County of Hennepin v. Bell, supra; Ramsey County v. Macalester College, 51 Minn. 437; County of Ramsey v. Church of Good Shepherd, supra; People v. Board, 174 Ill. 177; Chicago Theological Seminary v. Illinois, 188 U. S. 662.

The application of the proceeds of property to the purposes of education or charity will not exempt the property itself from taxation. Cleveland v. Pelton, supra; Hibernian v. Kelly, supra; Cincinnati v. State, supra; Trustees v. City, supra; 1 Desty, Taxn. 119; St. Marys v. Crowl, supra; State v. Board, 35 La. An. 668; Stahl v. Kansas, 54 Kan. 542; Trustees v. Bohler, 80 Ga. 159; Northwestern v. People, 80 Ill. 333; Washburn v. Commrs., supra.

The fact that rents and revenues of property owned by a charitable corporation are devoted to charitable purposes will not exempt such

property from taxation. It is only when the property itself is actually and directly used for charitable purposes that the law exempts it from taxation. City v. St. Annas, 31 La. An. 292; City v. Congregation, 15 La. An. 389; City v. New Orleans, 27 La. An. 436; Baltimore v. St. Marys, 50 Md. 343; Morris v. Lone Star, 68 Tex. 698; Trustees v. City, supra; American v. City, 161 Pa. St. 307; First M. E. Church v. City, 26 Ill. 482; Town of Mitchellville v. Board, 64 Iowa, 554; State v. Krollman, 38 N. J. L. 574.

*A. D. & A. L. Keyes* and *W. H. Lightner,* for respondent.

BROWN, J.

Proceedings to enforce the payment of personal property taxes alleged to be delinquent, in which defendant, the Bishop Seabury Mission, answered, claiming that the personal property sought to be taxed was exempt, under the provisions of section 3, article 9, of the state Constitution. Defendant had judgment in the court below, and plaintiff appealed.

The facts are as follows: Defendant is a corporation organized under and pursuant to the statutes of this state as an educational institution, having no capital stock, and is and always has been conducted without profit, or a view to profit, and has for its declared object the diffusion of religion and learning. It has for many years past continuously owned and conducted institutions of learning, consisting of two departments, Shattuck School and Seabury Divinity School, with suitable school buildings, completed and in process of construction, which have been specially designed, arranged, and erected therefor, at a cost of several hundred thousand dollars, on ground owned by it in the city of Faribault. It also has certain endowments, aggregating something like $275,000, which are invested in various ways; the income being used exclusively in the maintenance of the mission. The endowment fund was assessed for taxation by the authorities of Rice county, and a tax of $9,163.80 levied thereon. The tax was not paid. The usual citation was issued to defendant by the district court, in response to which it appeared, and made answer that, under the provisions of the Constitution of the state, the fund in question was exempt from taxation. The trial court, in addition to these general facts, found that the buildings and grounds owned by defendant

were purchased and erected with funds donated by benevolent people; that such funds, including the endowment sought to be taxed, were given to the mission in trust, with the intent that the income therefrom should be used for the purpose and objects of the mission, viz., the advancement of education and religion; that the income derived by it from all sources, including that from the fund on which the taxes in controversy were assessed, is insufficient to operate the mission as the same is now conducted; and that it is operated, on the whole, at a loss.

Defendant claims immunity from taxation under the following provision of the state Constitution; the same being section 3, article 9:

"Laws shall be passed taxing all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and also all real and personal property, according to its true value in money; but public burying-grounds, public school-houses, public hospitals, academies, colleges, universities and all seminaries of learning, all churches, church property used for religious purposes, and houses of worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property, to an amount not exceeding in value two hundred dollars for each individual, shall, by general laws, be exempt from taxation."

Defendant comes within the class of institutions to which the exemption is thus extended, designated as "seminaries of learning," but is not an "institution of purely public charity." The Constitution recognizes, and the intention was to make, a distinction between "colleges, universities, * * * seminaries of learning," and "institutions of purely public charity." While all colleges and seminaries conducted without a view to profit, and with funds contributed by benevolent persons, are, in a legal sense, and for certain purposes, charitable institutions (State v. Board of Control, 85 Minn. 165, 88 N. W. 533), the Constitution is restrictive. The intention was to exclude from that class colleges and seminaries of learning. So that a "purely charitable institution," within the meaning of this constitutional provision, may be said to be an institution organized for the purpose of rendering aid, comfort, and assistance to the indigent and defective, open to the

public generally, conducted without a view·to profit, and supported and maintained by benevolent contributions. County of Hennepin v. Brotherhood of Church of Gethsemane, 27 Minn. 460, 8 N. W. 595. Defendant is therefore a "seminary of learning," and not a charitable institution, within the meaning of the Constitution; and the question presented for decision is whether its endowment fund, or the income therefrom, used and devoted exclusively to its maintenance is exempt from taxation.

The Constitution, in this respect, is self-executing; it creates the exemption. No legislation is necessary to give it force or effect, and statutory enactments can neither add to nor take from it. The question whether defendant's endowment fund is exempt from taxation must be determined, therefore, solely from the construction to be placed upon the constitutional provision just quoted. It is to be construed strictly, within the rules of law applicable to the subject, for immunity from taxation is never recognized, except where granted by the law-making power in terms too plain to be misunderstood; and judicial construction cannot make statutes providing therefor embrace other property than what is plainly expressed in the law. But as remarked by Justice COLLINS in State v. Cooley, 62 Minn. 183, 64 N. W. 379, statutes extending such exemptions are to be given a reasonable and practical construction, and one that will give effect to the manifest purpose of the lawmakers.

It has been the policy of our people, from the organization of the territory to the present time, to encourage and by all proper means assist in the support and maintenance of educational institutions. Such was the policy of the federal government prior to the organization of the state, for it was enacted by article 3, Ordinance of 1787, providing for the government of the Northwest Territory, of which Minnesota formed a part, that "religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." The policy of our own people is shown both by territorial and state legislation, for we find upon our statute books numerous enactments exempting such institutions from taxation. The territorial legislature exempted all personal property of literary, benevolent, charitable, and scientific institutions incorporated within the territory, and such real estate be-

longing to them as was actually occupied for their purposes. R. S. 1851, c. 12, § 4. During territorial days several educational institutions were incorporated by special acts of the legislature, in which provision was made exempting from taxation all property owned by them, both real and personal, among which were Pillsbury Academy, Hamline University, and St. John's Seminary, and those institutions are today enjoying the benefit so extended them. County of Nobles v. Hamline University, 46 Minn. 316, 48 N. W. 1119.

The work of such institutions is done primarily for the individual educated, but results ultimately in the public good. Their function is largely public, and property possessed by them is devoted, not to private gain to individuals, but to a beneficent use—the education and enlightenment of the citizen. Corporations or individuals who are charged as trustees with the maintenance of such institutions are not the recipients of special privileges in any sense obnoxious to the law. On the contrary, the theory in extending to them immunity from taxation is that the property is placed at the service of the state, and ought not to be burdened with taxation. It is retired from private ownership, and devoted exclusively to the support and maintenance of institutions, the encouragement of which our people have always consistently kept in the foreground.

In construing the section of the Constitution under consideration, the spirit of the times when it was adopted, as shown by the attitude of the territorial legislature and the people, should be infused into it, and reasons of practicability and effectiveness, so far as consistent with the usual canons of construction, applied in determining its purpose and meaning. In this light, it is important to inquire how such institutions may best and most successfully be encouraged. The "encouragement" ought not to be limited to mere formal acts of recognition or praise on the part of the state or people, but to broad acts of such potentiality as will result in substantial benefit and assistance to them. Of course, the people would not tolerate the direct appropriation of money from the public treasury for such institutions, and immunity from taxation has been resorted to as the most effectual and substantial way of extending them aid and assistance. What class of property was intended to be embraced in this exemption? It cannot, in view of the language of the Constitution, be limited to real

90 M.—7

property, for, if such had been the intention, it would have been so expressed. Prior to its adoption, both real and personal property had been exempted by the territorial legislature, and there is nothing to indicate an intention to change the system, and limit the exemption to either real or personal property.

The Constitution, and the statutes enacted under it, have been before the court in several cases, but no case has presented precisely the question involved in the case at bar. In St. Peter's Church v. Board Co. Commrs., 12 Minn. 280 (395), certain real property—a parsonage—was claimed to be exempt; but it was held not within the exemption, because not devoted exclusively to religious purposes. Real estate was involved in County of Hennepin v. Brotherhood of Church of Gethsemane, supra, and in County of Hennepin v. Grace, 27 Minn. 503, 8 N. W. 761, and was held exempt; the defendants therein being held to be "purely charitable institutions" within the meaning of the Constitution. In County of Hennepin v. Bell, 43 Minn. 344, 45 N. W. 615, the defendant sought to avoid taxation on the ground that the property taxed had been leased by him to a seminary of learning, but his contention was overruled. It was held that he could not thus avoid taxation. In County of Ramsey v. Church of Good Shepherd, 45 Minn. 229, 47 N. W. 783, real property alleged to be devoted to and used for religious purposes was alone involved, and the rule laid down in St. Peter's Church case was followed and applied. In Ramsey Co. v. Stryker, 52 Minn. 144, 53 N. W. 1133, both real and personal property were involved. But the question there before the court was not what property was intended to be embraced within the constitutional exemption, but whether the exemption should be extended to a seminary operated by a private individual—a person who owned in his own right the property sought to be charged with taxation, but who conducted therewith a seminary of learning.

In most of the cases reported in the books from other states where this question has been considered, real property alone has been involved; and by a practically unanimous voice it has been held that the exemption extends to and embraces such land and real property only as is necessary for, and in fact used in connection with, the institution. But the language of the statutes of the different states providing for such exemptions varies, and the authorities generally

are of but little assistance. Our Constitution exempts "academies, colleges, universities, and all seminaries of learning"; and the language justifies, construing it in the light of conditions existing when the Constitution was framed, the contention that the privilege was intended to be extended to the institutions, and not to specific property, and, to give it force and effect, it must be held to embrace both real and personal property. This is practically conceded by counsel for appellant, but he insists that the rule adopted by the court in respect to real property, viz., that only such property as is immediately connected with and used by the institution is exempt, should be applied as well to personal property; that, as the endowment fund is loaned out on farm and other security, the income only being devoted to sustaining the school, the general rule should be applied, and the fund taxed. While there is much force in this contention, we do not believe the spirit or purpose of the Constitution requires us to adopt it. It would be of little benefit to such institutions to exempt their buildings, and at the same time tax the funds necessary for their support and continued existence, as, in the case at bar, at a rate exceeding three per cent.

Endowments to colleges and seminaries of the class here under consideration are donated by benevolent persons in trust, the principal to remain intact, the income therefrom alone to be used in their support and maintenance. Such endowments, in the nature of things, become a part or portion of the institution. They constitute their means of support, and are as essential as libraries, furniture, and other personal property used by them. It is undoubtedly the first attempt in this state to tax such funds, it being generally understood that they are exempt. Such has been the belief of those whose generosity has prompted donations of the kind. If it were understood that such funds were taxable, and that over half and more of the income derived therefrom would be necessary to discharge the same, it would tend to discourage future contributions, and result in the detriment and irreparable injury of the educational interests of the state.

It is clear to us—at least, we have no difficulty in holding—that the framers of the Constitution did not anticipate such a condition of things, nor did they intend that the library, furniture, or tuition fees paid by students should be subject to taxation. If the fund realized from tuition comes within the exemption, no sound or logical reason

occurs to us why the endowment should not also come within the benefits of the law. Both are indispensable in the maintenance of the institution, in the payment of its expenses. Of course, if such fund should be invested in real property, the immunity from taxation would cease, within the rule of the cases herein cited; but so long as it remains intact, and is used in connection with and for the support of the institution, it should be exempt from taxation. This may seem somewhat inconsistent with the rule as applied to real property, but it harmonizes with the best interests of such institutions, and the policy of the state in their encouragement, and we adopt it.

Our conclusions are in harmony with those reached by the learned trial court, and the judgment appealed from is affirmed.

Judgment affirmed.