## STATE v. SECOND CHURCH OF CHRIST, SCIENTIST.[1]

January 29, 1932.

No. 28,557.

*Edward J. Goff,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for the state.

*George Beaverson,* for respondent.

OLSEN, J.

Appeal by the state from an order denying its motion for a new trial. We refer to the state as plaintiff and to the Second Church of Christ, Scientist, as defendant. Plaintiff is seeking to enforce

[1]Reported in 240 N. W. 532.

payment of taxes for the years 1927 and 1928 upon certain real property owned by defendant in the city of Minneapolis.

Defendant is a religious corporation organized under the laws of this state. Its activities are devoted exclusively to religious and charitable purposes. It owns and has owned and occupied for many years last past a church building located a block away from the property here in question.

As early as 1921 its old church building and premises became too small and inadequate to accommodate and care for the attendance at its church services and Sunday school. That situation has since continued, and the need for larger quarters has become greater. In 1922 it was decided to purchase a site for new and larger church buildings. A committee was appointed to raise funds, and commenced and has since continued so to do. In 1924 a site was selected and contracted for, but the city desired and took that site for an auditorium. The defendant then selected the property now in question, consisting of lots 1, 2, 3, 4, and 5 in Snyder & Company's First Addition, and acquired title thereto in 1924 and 1925. In 1927 it acquired the adjoining rear 50 feet of lot 12 in the same block as an addition to its building site. In December, 1926, an architect was employed and commenced gathering data for making plans for the buildings. Two buildings were decided on, one the church building proper, and one to be known as the administration building, to house the heating plant and other appliances for both buildings and for offices and Sunday school rooms. The administration building is to be connected with the church building and used in the operation thereof. The buildings are to be a large modern church plant and are to cost, as estimated by the witness Nash, about $900,000.

The first complete plans were presented by the architect in December, 1927. Changes and alterations were found necessary, and time was consumed in perfecting the plans. They were finally approved in March, 1928. Some later changes were made. Payments were made from time to time to the architect as his work progressed. Bids for construction of the administration building were called for in September, 1929, and the contract thereafter let. Work on

this building was commenced in May, 1930, and the building was nearing completion at the time of the trial. This building is located on the rear 50 feet of lot 12. It contains the plant for heating both buildings. It also has provision for an underground passage to connect with the church building, for heating pipes, electric wires, etc. The building is an integral part of the whole plan to be completed. The entire grounds purchased are not larger than necessary for the church plant. Lots 1, 2, 3, 4, and 5, on which the church proper is to be built, have up to this time no buildings thereon. They have been leased out for parking purposes, and some small income has been received therefrom. There was, up to the time work was commenced on the administration building, a tenement or rooming house located on the rear 50 feet of lot 12 from which the defendant received a small revenue. The raising of funds for construction of the church building, while continuing, has been retarded by the financial depression. It is the intention to commence and complete the erection of the church building as rapidly as funds are procured.

The court held that the property was exempt from general taxes for the years 1927 and 1928, except that the rear 50 feet of lot 12, having been purchased after May 1, 1927, was liable for taxes of that year.

■ In applying the constitutional tax exemption of "all churches, church property and houses of worship," we have held that the same rule applies as that applied to the exemption granted to public hospitals, colleges, universities, and charitable institutions. The test is the use to which the property is devoted or about to be devoted. It is not necessarily the use or nonuse of the property at the exact time when the tax is levied. The location of the property with reference to buildings in which the institution carries on its activities, the present need of the institution for the use of the property, and its present good faith intention to make use of the property in the near future are elements to be considered. Generally an institution of a public or semi-public nature cannot use real property for its buildings or activities until some reasonable time after it acquires title or the right to use such property,

especially where building operations requiring large expenditures are involved. Time is usually consumed in making plans and raising funds. Where there is present need for the property as a site for new church buildings for a religious corporation, the exemption should not be so strictly construed as to require that the corporation have sufficient funds on hand to proceed immediately to build all needed buildings as soon as it procures a site. The rule, as indicated in our decisions, is that, where there is present need for a site for new church buildings, property purchased for that purpose, a good faith intention to build a church plant on the property within a reasonable time, a fund being continuously raised for that purpose, an architect employed to prepare plans for the buildings, and one unit of the buildings thereafter commenced and completed within reasonable time, the property is exempt from general taxes, at least from the time the architect is so employed. County of Ramsey v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278; State v. Carleton College, 154 Minn. 280, 191 N. W. 400; State v. Church of Incarnation, 158 Minn. 48, 196 N. W. 802; State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326.

It is undisputed that the property is no larger than is reasonably necessary and is in a proper location for the intended use. The facts justified the court in holding the property exempt under the rules stated.

It is suggested that defendant, notwithstanding its present intention, may unreasonably or indefinitely delay further building. That question may arise in the future but is not now before us. If that should happen, we have no doubt the courts will afford to the state any relief it may show itself entitled to.

■ The fact that the defendant obtained some small incidental income from the property, much less than the taxes claimed, is not of great importance and is not a sufficient ground for denying the exemption.

Order affirmed.