# STATE v. BOARD OF FOREIGN MISSIONS OF AUGUSTANA SYNOD.[1]

April 26, 1946.

No. 34,174.

[1]Reported in 22 N. W. (2d) 642.

*A. C. Lindholm,* for appellant.

*Michael J. Dillon,* County Attorney, and *Edward J. Shannon,* Special Assistant County Attorney, for the State.

MATSON, JUSTICE.

Appeal by defendant from judgments entered in two separate proceedings to enforce the collection of real estate taxes.

Defendant is a nonprofit religious corporation organized under the laws of Minnesota as a subsidiary of the Evangelical Lutheran Augustana Synod of North America, a national unincorporated religious association. There are 1,174 congregations or parishes constituting the membership of the synodical association, hereinafter called the Synod, and which are subject to its control and guidance in matters of general ecclesiastical policy. These congregations are grouped within the Synod in 13 different conferences or areas. The individual congregations send delegates to the annual meeting of their respective conferences, and in turn the conferences elect and send delegates to the annual meeting of the Synod, where general matters of policy are determined and the synodical officers are elected. Minnesota, with 352 individual congregations, constitutes the greater part of the area of two conferences.

The corporate purpose of defendant is in particular to carry on, manage, and conduct such missionary and educational work in foreign lands as is sustained, in whole or in part, by the Synod; to erect churches, schools, hospitals, and other institutions necessary or convenient for the missionary activity; and to receive gifts for the work and secure ministers, teachers, and other necessary personnel. The Synod elects defendant's board of directors; audits,

approves, and controls its budget and expenditures; determines the policies controlling defendant's operations; and, aside from certain freewill gifts, provides the necessary finances. Defendant, though incorporated, operates strictly as a subsidiary department of the Synod. Through its board of directors, it elects and employs an executive director, an office staff, and a large corps of missionaries who serve in China, Africa, India, and Latin America. The executive director, who is always a clergyman, has charge of the administrative activities of defendant, supervises the missionary work, prepares and submits missionary program plans for the approval of the board of directors, and acts as a contact man between defendant, the Synod, and the various conferences and congregations. In addition to his annual salary, he is furnished rent free a residence in Minneapolis located about five miles distant from defendant's principal place of business. This residence, occupied by him and owned by defendant at all times herein pertinent, is described as follows:

The South 20 feet of Lot 12, all of Lot 13 and the North 4 feet of Lot 14, all in Block 1, Willard Park Addition to Minneapolis, otherwise known as 1731 Oliver Avenue North, Minneapolis, Minnesota.

In proceedings below to enforce the collection of delinquent real estate taxes duly levied and assessed for the year 1943 against the above premises, defendant interposed its answer alleging that said property is exempt from taxation. In separate proceedings, defendant petitioned for the abatement of the 1944 taxes. Both proceedings were consolidated for trial below and for the purposes of this appeal. The trial court in its findings determined that the property was "not used for or devoted to church purposes within the meaning of the constitution and the laws of the state of Minnesota." Pursuant to these findings, a judgment was entered in each case against defendant. From these judgments, this appeal is taken.

The fundamental issue is whether a residential property owned by a subsidiary corporation organized under the auspices

and operated subject to the control of an established general church organization or sect for the sole purpose of conducting missionary and educational work in foreign lands for the propagation of its religious faith, which property is furnished rent free to, and occupied by, such subsidiary corporation's administrative or executive director, is immune from taxation under Minn. Const. art. 9, § 1, which provides:

"* * * but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, *all churches, church property and houses of worship,* institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, * * *." (Italics supplied.)[2]

The wording of the foregoing constitutional provision dates from the adoption of the 1906 amendment.[3] Prior to such amendment, the words above italicized read as follows: "all churches, church property *used for religious purposes,* and houses of worship," the words "used for religious purposes" (which we have italicized) having been eliminated by the 1906 amendment.

This court, prior to the 1906 amendment, had held that the constitutional exemption from taxation accorded to a church building or place of worship could not be extended to include a parsonage, in that the primary use of the latter as a residence is secular and not religious.[4] In eliminating the words "used for religious pur-

[2]This section, though reflected in Minn. St. 1941, § 272.02 (Mason St. 1927, § 1975), as amended, is self-executory. See, State v. Church of Incarnation, 158 Minn. 48, 52, 196 N. W. 802, 803; State v. Bishop Seabury Mission, 90 Minn. 92, 96, 95 N. W. 882.

[3]See, L. 1905, c. 168; Kumm, The Constitution of Minnesota Annotated, pp. 164, 171-172, 182-183; Anderson and Lobb, History of Constitution of Minnesota, pp. 237, 240.

[4]St. Peter's Church v. Board of County Commrs. (1867), 12 Minn. 280 (395); County of Hennepin v. Grace (1881), 27 Minn. 503, 8 N. W. 761; County of Ramsey v. Church of The Good Shepherd (1891), 45 Minn. 229, 47 N. W. 783, 11 L. R. A. 175; Kumm, The Constitution of Minnesota Annotated, p. 183.

poses," the intent undoubtedly was to extend the benefits of tax exemption to a larger classification of church property,[5] and this intent was recognized in State v. Church of Incarnation, 158 Minn. 48, 52, 196 N. W. 802, 804, wherein we said:

"* * * The words 'used for religious purposes' have been eliminated, so that the language relating to churches is now as broad as that relating to institutions of learning.

"* * * we have no doubt that the purpose in eliminating those words was to remove the restriction which they had been construed as placing on the exemption granted to churches, and to make the rule applied in respect to the property of institutions of learning applicable in respect to the property of churches to the extent of exempting a parsonage owned and maintained by a church organization as a residence for its pastor."

In subsequent decisions, we held that the same rule governing the exemption granted to public hospitals, colleges, universities, and charitable institutions is now applicable to churches. State v. Union Congregational Church, 173 Minn. 40, 45, 216 N. W. 326, 328; State v. Second Church of Christ, 185 Minn. 242, 244, 240 N. W. 532, 533.

In Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278, dwelling houses owned by the college and furnished rent free to its professors were held exempt from taxation in that they were reasonably necessary and appropriate for the proper occupancy, use, and enjoyment of the college. The rule was amplified in State v. Carleton College, 154 Minn. 280, 286,

---

[5] In 1907, when the actual adoption of the 1906 amendment was still in doubt, the legislature proposed substantially the same amendment, but with the words "used for religious purposes" restored in order to reduce the amount of tax-exempt property. L. 1907, c. 477. This proposed amendment failed of ratification. See, Kumm, The Constitution of Minnesota Annotated, pp. 171, 172.

The adoption of an amendment raises a presumption that a change in the existing law was intended. State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798; Rieger v. Harrington, 102 Or. 603, 203 P. 576.

191 N. W. 400, 403, wherein the court held that student dormitories and faculty-occupied residences located upon college-owned land, even though detached from the campus, were devoted to and reasonably necessary for the accomplishment of the institution's educational purposes and therefore tax-exempt. In this latter case, the court said:

"All authorities agree that when an institution is exempted from taxation this includes all its property devoted to and reasonably necessary for the accomplishment of its purposes."

As already noted, the foregoing rule was extended under the 1906 amendment to church parsonages in State v. Church of Incarnation, 158 Minn. 48, 196 N. W. 802, and State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326, *supra;* and to church buildings in State v. Second Church of Christ, 185 Minn. 242, 240 N. W. 532, *supra.* In the second of the cases cited, this court, in denying tax exemption for a lot and dwelling owned by a church corporation and not used as a residence for its pastor or for any religious or charitable activity but rented out to others with the rental therefrom used to sustain the religious activities of the church, laid down the principle (173 Minn. 45, 216 N. W. 328) "that it is the use or relation of the property to the purposes and activities of the church organization which determines whether or not it is church property" and thus immune from taxation. In applying this principle, it is of the utmost importance to keep in mind that "the basis of tax exemptions is the accomplishment of public purposes and not the favoring of particular persons or corporations at the expense of taxpayers generally." State v. Ritschel, 220 Minn. 578, 583, 20 N. W. (2d) 673, 676; State v. Bishop Seabury Mission, 90 Minn. 92, 97, 95 N. W. 882, 883. The nature of the use of the property, its reasonable relation to the accomplishment of the objectives of the institution which owns it, and the identity of these objectives with the public welfare constitute the *sine qua non* of all tax exemption.

■ In the instant case, it is immaterial whether the residence occupied by defendant's executive director be considered a parsonage or not. Its immunity or nonimmunity from taxation is not to be determined by any such arbitrary rule of thumb. The constitutional exemption in the interest of the public welfare was granted, not to a church building or parsonage, but to the church as a living institution for the advancement of religion as a way of life for all men. It is noteworthy that from a time long prior to the organization of Minnesota as a territory to the present it has been the policy to encourage "religion, morality and knowledge" as "necessary to good government and the happiness of mankind." Laws of Northwest Territory (Pease), Illinois Historical Collections, Vol. XVII (Vol. 1, Law Series), chapter entitled "Ordinance of 1787," ART. III, p. 128; State v. Bishop Seabury Mission, 90 Minn. 92, 96, 95 N. W. 882, 883. Although it is a general rule that constitutional provisions exempting property from taxation are to be strictly construed, such provisions, though not subject to extension by construction or implication, are to be given a reasonable, natural, and practical interpretation to effectuate the purpose for which the exemption is granted. State v. Union Congregational Church, 173 Minn. 40, 45, 46, 216 N. W. 326, 328. See, Roman Catholic Apostolic Church v. Hastings, 5 Philippine 701; In re Segregation of School Dist. No. 58, 34 Idaho 222, 200 P. 138. Keeping in mind the fundamental purpose of encouraging the advancement of religion for the public good, it would indeed seem arbitrary to hold that the furnishing of a rent-free parsonage to a clergyman in charge of a local congregation or parish is reasonably necessary and appropriate for the accomplishment of church objectives, but that the furnishing of a similar residence to an ecclesiastical official directing the religious or missionary work of the entire church is not. What is reasonably necessary with respect to a subordinate church unit cannot be any less necessary when applied to an aggregation of subordinate units in the interest of coördinating the missionary activities of the church as a whole. Obviously, the benefit of tax exemption was granted to the church as an institution and

as a whole and not merely to its subordinate units. Here, we are dealing with a residential property owned and furnished rent free to a church official performing an important executive function in directing the missionary work and policies of the entire church. We must be guided by the nature and the importance of his ecclesiastical duties and not be misled by his title or lack of title. Whether he be called a bishop or merely an executive director is immaterial. See, Bishop's Residence Co. v. Hudson, 91 Mo. 671, 4 S. W. 435.

We hold that the furnishing of a rent-free residence to a church executive whose guiding hand coördinates and directs the missionary activities of an entire church is reasonably related to the accomplishment of church purposes, and in so doing we find no basis for the expressed fear that all limitations upon tax exemption will thereby be destroyed. Any such fear results from a loss of perspective in failing to relate the use of the property to the reasonable needs for the accomplishment of the institution's objectives. In the light of the complete separation of church and state, a line of demarcation which does not exist with respect to educational institutions, it does not necessarily follow that the rule applicable to the latter will necessarily be applied with equal liberality to all cases involving church property. See, State v. Carleton College, 154 Minn. 280, 283-284, 191 N. W. 400, 402. Each case must be judged on its own merits.

■ In the instant case, the residential property is located in Minneapolis at a considerable distance from defendant's principal office. The location of the property with reference to the building in which the institution carries on its activities is an element to be considered, but it is not controlling. State v. Second Church of Christ, 185 Minn. 242, 244, 240 N. W. 532, 533. A mere separation of the residential property from the principal place of activity is by itself of no significance. State v. Carleton College, 154 Minn. 280, 286-287, 191 N. W. 400, 403. Clearly, in a metropolitan area where established means of passenger travel are readily available, the location of the residence at a considerable distance from the

administrative offices of the church has no bearing upon the relationship between the use of the property and the accomplishment of church purposes.

It is immaterial that the missionary activities of the church are conducted through a subordinate corporation organized for this specific purpose and subject to its control and direction. The corporate device is a recognized means adopted by many institutions for the administration of certain departmental or divisional activities and has no bearing on the merits. Decisions involving merely an affiliate relationship between an incorporated local church and the general church organization, such as Trinity Church of Infinite Science v. First Spiritualist Church, 221 Minn. 15, 20 N. W. (2d) 534, and Rock Dell N. E. L. Congregation v. Mommsen, 174 Minn. 207, 209, 219 N. W. 88, 89, obviously are not in point.

Both judgments are reversed.

[1]Reported in 22 N. W. (2d) 637.