## CAMPING AND EDUCATION FOUNDATION v. STATE.

164 N. W. (2d) 369.

January 10, 1969—No. 41280.

*David C. Donnelly, Edward N. Denn, Oppenheimer, Hodgson, Brown, Wolff & Leach,* and *Mark M. Abbott,* for appellant.

*Eugene T. Williamson,* County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Plaintiff, chartered as a nonprofit corporation under the laws of Ohio, appeals from a judgment of the District Court of Koochiching County entered November 20, 1967, denying its petition for exemption from payment of real estate and personal property taxes.

Petitioner's address and principal place of business is 7930 Indian Hill Road, Cincinnati, Ohio. It alleges that it is a nonprofit educational and charitable corporation and is exempt from state and Federal income taxes because of its educational and charitable purposes. It has been certified as a foreign corporation doing business in Minnesota and is currently engaged in operating a 163.05-acre boys' summer camp, known as Camp Kooch-I-Ching, on Deer Island in Rainy Lake, Koochiching County. The legal description of the tract is as follows:

"All of Lots One (1) and Four (4), Section Thirty (30), Township Seventy-one (71), Range Twenty-two (22); and all of Lot Three (3) in said Section 30-71-22, except that portion thereof described as follows, to-wit: Beginning at the Northeast (NE) Meander Corner of said Lot Three (3) and running thence in a Southwesterly (SW) direction along and upon the Meander Line of said Lot Three (3) to a point where said Meander Line turns and runs in an Easterly (E) direction, thence from said point due North (N) to a point in the North (N) Line of said Lot Three (3), thence East (E) along and upon the North (N) Line of said Lot Three (3) to a point of beginning; and all of Lot Six (6), Section Twenty-five (25), Township Seventy-one (71), Range Twenty-three (23), and all that part of Lot Two (2), Section Thirty (30), Township Seventy-one (71), Range Twenty-two (22), Lot Five (5) and the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of said Section 25-71-23 lying to the South (S) of a certain line described as follows, to-wit:

"Commencing at the Northeast (NE) Meander Corner of said Lot Two (2), Section 30-71-22; running thence due South (S) 307 feet; running thence at an angle 34° 36′ right 657.7 feet; running thence at an angle 23° 43′ right 281.5 feet; running thence at an angle 43° 51′ right 265 feet; running thence at an angle 60° 14′ left 1517.4 feet, thence at an angle 6° 30′ right 666.7 feet; running thence at an angle 13° 43′ right 787 feet; running thence at an angle 22° 41′ left 830.3 feet to a point in the Meander Line of said Lot Five (5), said point being approximately 2160 feet West (W) of the Range Line and Meander Corner of said line at the Southeast (SE) Corner of said Lot Six (6); all of the above described premises being subject to reservations of minerals as set forth in the owner's Certificate of Title."

It is also the owner of considerable personal property used to facilitate the purposes of the camp.

It appears that the purpose or purposes of petitioner are described in amended Article Third of its articles of incorporation as follows:

"* * * The purpose or purposes for which said corporation is formed are exclusively charitable and educational and no other: in furtherance thereof, (A) to educate, instruct and train children and adults by means of camping experiences and other programs for the purpose of developing and improving their individual capabilities and skills, their appreciation of higher values and their ability to live harmoniously and responsibly in the American society; (B) to educate, instruct and train teachers and counsellors by means of on-the-job-training and to advance and promote their education and training by scholarship loans and grants; (C) through research to increase the educational value of camping experiences and to develop and improve national standards for camping, teachers and counsellors; (D) to promote the well-being of mankind by means of participation in outdoor activities and programs and conservation of the American heritage of appreciation of wildlife and natural resources; (E) to operate regular camping programs in order to carry out the aforesaid purposes; (F) and to perform any and all acts permitted under Chapter 1702 (non-profit corporation law) of the Ohio Revised Code as the

same now exists or may hereafter be enacted, which are consistent with and necessary to carry out the aforesaid purposes."

It also appears from exhibits introduced and received in evidence that petitioner has made application and has been granted exemption from state and Federal income taxes. It is a nonprofit corporation and no part of its net earnings may at any time inure to the benefit of any of its members, trustees, or officers. The membership in said corporation consists of the founders, organizers, and incorporators, plus all individuals who have financially contributed thereto.

The established program of petitioner is implemented by trained counselors who supervise the campers and are directly responsible for the educational values that are imparted to them. The primary objective of the training program is to provide young campers a stronger background for constructive living as adults and to impart values to the boys.

Petitioner's property is being used by it pursuant to its articles of incorporation and bylaws. Camp Kooch-I-Ching is a supervised camp for boys to improve their health, develop good character, and provide them with outdoor recreation. The full tuition for the 8-week season at the camp is $750 per boy, which is either paid for by the individual or through the awarding of a scholarship. In the year 1967, 96 out of 108 campers paid the full tuition. In that year Camp Kooch-I-Ching set up a revised budget based in part on receipt of tuition fees of $78,000 and payment of $6,475 in scholarship grants and discounts. Two campers had both their tuition and travel expenses paid in full. Nine or ten campers partially paid their way.

The record discloses that the operating income for the 5-year period 1962–1966 totaled $385,893.93, of which $369,150 consisted of tuition fees. Petitioner basically gives scholarships by granting credit as opposed to paying money to the recipient. The income from tuition fees would include the amounts granted as scholarships.

Petitioner publishes the fact that scholarship aid is available in the American Camping Association Magazine. Funds for scholarship aid are raised from donations or taken from operating income.

Prior to April 1962, the camp was operated in substantially the same manner but as a profitmaking enterprise. The current camp director was

the majority stockholder in the prior camp and is the organizer of petitioner corporation.

Taxes payable in 1967 were levied against said real estate in the sum of $2,577.62 and against the personal property in the sum of $211.07. Petitioner prior to filing its petition paid to the county treasurer of Koochiching County 50 percent of the tax against its real estate and 100 percent of the personal property tax payable in 1967. Petitioner claims that said property is exempt from taxes under the provisions of Minn. Const. art. 9, § 1, and Minn. St. 272.02(6) enacted pursuant thereto in that petitioner is exclusively an "institution of purely public charity" under the terms of its incorporation.

That part of Minn. Const. art. 9, § 1, pertinent to this appeal provides:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, *institutions of purely public charity*, and public property used exclusively for any public purpose, shall be exempt from taxation * * *." (Italics supplied.)

Minn. St. 272.02 implements this constitutional provision in the following terms:

"All property described in this section to the extent herein limited shall be exempt from taxation:

* * * * *

"(6) Institutions of purely public charity."

The court below held that petitioner is not a charitable corporation within Minn. Const. art. 9, § 1, and Minn. St. 272.02(6), but is a nonprofit corporation; that the petition should be denied; and that the taxes levied against the property had been so levied pursuant to law.

Through this appeal petitioner seeks to establish charitable-institution status in the State of Minnesota and exemption from state and county property taxes on its property here. The issue before us is whether a nonprofit corporation is entitled to tax exemption as an "institution of

purely public charity" when its sole function is operating a summer camp to which some scholarships are given, when charges are made to the clientele and the bulk of the operating expenses is derived from such charges.

There are certain general rules which have been long established relating to statutes and constitutional provisions providing for exemption from taxes. The basis for all tax exemption is the accomplishment of some public purpose as opposed to favoring of particular persons or corporations at the expense of the taxpayers generally. State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. (2d) 642. Accord, State v. Ritschel, 220 Minn. 578, 20 N. W. (2d) 673, 168 A. L. R. 274; State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. (2d) 242; State v. Northwestern Vocational Institute, Inc. 232 Minn. 377, 45 N. W. (2d) 653.

One of the rules that is well established is that taxation is the rule and exemption is an exception in derogation of equal rights. Therefore, there is a presumption that all property is taxable. In consequence, the burden of proof is on the one seeking the exemption to establish that he is entitled to the exemption. See, In re Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 135 N. W. (2d) 881; Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; American Ry. Exp. Co. v. Holm, 169 Minn. 323, 211 N. W. 467.

Another long-established rule is that exemption provisions are to be strictly construed. See, Ramaley v. City of St. Paul, 226 Minn. 406, 33 N. W. (2d) 19. See, also, St. Peter's Church v. County of Scott, 12 Minn. 280 (395); County of Hennepin v. Bell, 43 Minn. 344, 45 N. W. 615; County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 A. L. R. 175.[1]

---

[1] In so far as Minnesota decisions are concerned, the only apparent exception to the rule of strict construction of the tax exemption provisions is the provision relating to schools of various types. In such cases the rule apparently does not apply because of a public policy of encouraging private educational institutions, which policy can be traced back to Article III of the Northwest Ordinance. See, State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; State v. Carleton College, 154 Minn. 280, 191

It is probably impossible to define precisely what is meant by the term "charity." In In re Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 390, 135 N. W. (2d) 881, 885, this court said:

"* * * [I]t is not safe to say as a universal rule that any gift which tends to promote man's well-being is a charity. Whether the property is exempt is a fact question which necessarily turns upon the particular use to which it is devoted; the exemption accordingly depends upon the particular facts in each case, and the burden of proof rests with the petitioner who seeks the exemption."

---

N. W. 400. Even with respect to that exception to the rule of strict construction, the exemption provisions have been relatively strictly construed and basically only those schools providing courses similar to or capable of being assimilated by the courses provided by the public educational system have been granted exemption from taxation. In consequence, certain trade schools and preparatory schools have been denied tax exemption. See, Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. (2d) 841; State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. (2d) 242; State v. Northwestern Vocational Institute, Inc. 232 Minn. 377, 45 N. W. (2d) 653.

Mr. Chief Justice Dell in the Graphic Arts case said (240 Minn. 153, 59 N. W. [2d] 848): "* * * These schools not only aid the individual student but also indirectly are beneficial to society in that they equip young men and women for more useful lives. But this is not the 'accomplishment of public purposes' contemplated by the tax exemption provisions. To entitle an institution to enjoy the benefits of tax exemption there must be the offering of a substantial part of the *general education* ordinarily given by publicly supported schools with the resulting lessening of the financial burden on the taxpaying public."

In State v. Northwestern Preparatory School, *supra,* the question before the court was whether tax-exempt status should be granted to a nonprofit corporation organized under the laws of the State of Minnesota for the declared corporate purpose of establishing and maintaining a school "for the thorough training of young men *for the competitive and entrance examinations* for the United States Military Academy at West Point, the United States Naval Academy at Annapolis, the United States Coast Guard Academy *and for appointment to and service* in the Army, Navy, Air Corps or other services for the United States of America." 249 Minn. 554, 83 N. W. (2d) 244. We said in that opinion that since an educational institution

A definition of charitable institution may be found in State v. Bishop Seabury Mission, 90 Minn. 92, 95, 95 N. W. 882:

"* * * [A] 'purely charitable institution,' within the meaning of this constitutional provision, may be said to be an institution organized for the purpose of rendering aid, comfort, and assistance to the indigent and defective, open to the public generally, conducted without a view to profit, and supported and maintained by benevolent contributions."

As used in the statute, the word "purely" in the term "purely public charity" was defined in State v. Willmar Hospital, Inc. 212 Minn. 38, 41, 2 N. W. (2d) 564, 566, as follows:

"* * * The word 'purely' means 'wholly,' 'solely,' and 'exclusively' in such exemption provisions."

When the rules and principles referred to herein are applied to the facts, it seems clear that petitioner is not entitled to tax exemption. What it does, does not in any just sense exercise any appreciable influence in lessening any burden the government would be under an obligation

---

may teach a variety of useful accomplishments and yet not be the equivalent of an academy, college, university, or seminary of learning which is entitled to tax exemptions under the Minnesota Constitution, it becomes essential whenever tax exemption is claimed, first, to determine as a fact question the actual function an institution performs in the field of public education as reflected by the *basic nature, thoroughness, scope, and purpose* of the educational program which it regularly offers to its students. Conflicts in evidence as to its true character and scope must be resolved by the trier of fact and if upon appeal the trial court's findings are challenged we must affirm such findings if they are reasonably sustained by the evidence as a whole. The accomplishment of the requisite public purposes in the case of seminaries of learning, we said (249 Minn. 557, 83 N. W. [2d] 246), is that of providing "some *substantial part* of the educational training which otherwise would be furnished by the various publicly supported schools, academies, colleges, and seminaries of learning and which, to such extent, thereby lessen the tax burden imposed upon our citizens as the result of our public educational system." Accord, State v. Northwestern Vocational Institute, Inc. 232 Minn. 377, 380, 45 N. W. (2d) 653, 655; Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. (2d) 841.

to assume—an accomplishment which is frequently put forward as the fundamental reason for exempting charities from taxation. As the trial court in its memorandum said—

"This is not a charity which represents a wholly generous and unselfish devotion of wealth to uses which benefit the *public generally* or whole classes of the public and from which the donors derive no personal advantage. This corporation could be compared to the Boston Symphony Orchestra when it was held to operate in such a manner with relation to the sale of tickets and other matters that its standing as a charity was doubtful, and it could not obtain exemption. (Boston Symphony Orchestra vs. Assessors of Boston, 294 Mass. 248, 1 N. E. 2d 6)."

It is true that its operation at this time is not for private profit, but this is not the sole criterion for determining tax-exempt status. If it were, any and all nonprofit corporations would be exempt.

We must start from the position that the property involved is presumed to be subject to taxation and that the petitioner has the burden of showing that it is entitled to the exemption sought. It must show that it is an "institution of purely public charity." While petitioner does perform some educational work, the difference between it and other summer camps appears to be one of emphasis rather than of facilities and experiences made available. Basically, the record herein indicates that petitioner is operating a venture with commercial aspects, since the bulk of its income results from tuition charges made to campers. It seems obvious that this commercial activity is not subordinate to or incidental to any possible charitable activities of petitioner.

We do not question the good purposes of this corporation. Its activities, however, although commendable, cannot in light of the foregoing facts be brought within the class of "institutions of purely public charity" contemplated by Minn. Const. art. 9, § 1, and Minn. St. 272.02 (6). It has not so far, in our view, dispensed charity as that term has been defined by this court in prior decisions. Petitioner is required upon the facts herein to share the burden of government along with the general public.

The order and the judgment of the trial court are affirmed.

Affirmed.