NORTH DAKOTA CONFERENCE ASSO-
CIATION OF SEVENTH–DAY
ADVENTISTS, Appellant,

v.

BOARD OF COUNTY COMMISSION-
ERS, STUTSMAN COUNTY, North
Dakota, Appellee.

Civ. No. 9140.

Supreme Court of North Dakota.

Oct. 30, 1975.

James D. Schlosser, Bismarck, for appellant.

Charles J. Gilje, State's Atty., Jamestown, for appellee.

PAULSON, Judge.

This is an appeal from a judgment of the Stutsman County District Court, which judgment reversed a decision of the North Dakota Tax Appeals Board granting an application for abatement and settlement of real estate taxes assessed for the year 1973 against certain residential property in Jamestown owned by the appellant, North Dakota Conference Association of Seventh Day Adventists [hereinafter Conference], a North Dakota religious corporation.

The facts in this case are undisputed. The Conference owns four lots, each consisting of less than two acres, in the City of Jamestown, described as follows:

*Lot # 1:*

North Sixteen feet (N 16′) of Lot Seventeen (17) and the South Fifty-two feet (S 52′) of Lot Eighteen (18), Block Five (5), Solien Denault First Addition, City of Jamestown, Stutsman County, North Dakota, and known as 329 14th Avenue, N.E.

*Lot # 2:*

Lot One (1), Block Eight (8), Solien Denault Second Addition to the City of Jamestown, Stutsman County, North Dakota, known as 338 14th Avenue, N.E.

*Lot # 3:*

North Fifteen feet (N 15′) of Lot Twenty-four (24) and the South Fifty-six feet (S 56′) of Lot Twenty-five (25), Block Ten (10), Solien Denault Second Addition to the City of Jamestown, Stutsman County, North Dakota, known as 309 16th Avenue, N.E.

*Lot # 4:*

Lot Two (2), Block Twenty (20), Solien Denault Sixth Addition to the City of Jamestown, Stutsman County, North Dakota, known as 326 16th Avenue, N.E.

Each of the above-described lots has situated thereon a house, which house is occupied by an elder of the Conference as his place of residence. Elders residing in the Conference-owned houses are licensed and ordained ministers who are assigned to perform full-time duties in connection with the operation of the Conference's state headquarters, which is located in Jamestown. The houses are used exclusively by the elders for themselves and their families as residences. The elders residing in the Conference's houses are in charge of temperance work, Sabbath schools, welfare and missionary work, evangelism, Bible studies, and stewardship programs throughout North Dakota. The elders are not assigned to one particular congregation or church building, but, instead, perform their special

duties with the different congregations of the Conference in North Dakota. In addition, each of the elders conducts at least one worship service each week in one of the Conference's 43 churches in the State. There is nothing in the record to show that the Conference is not the owner of its church buildings.

The four lots were purchased by the Conference at different times during the past 20 years. The City of Jamestown first assessed the lots for general ad valorem taxes for the year 1972. The Conference's application for an abatement and settlement of 1972 taxes was denied by the Stutsman County Board of Commissioners [hereinafter County], and no timely appeal was filed by the Conference. The lots were again assessed for general ad valorem taxes in 1973, and the Conference's application for abatement and settlement of the 1973 taxes is the subject of this appeal.

The Conference's application for abatement and settlement of the 1973 taxes was denied by the County. The Conference then appealed such denial to the North Dakota Tax Appeals Board, which held a hearing on the matter on November 21, 1974. The Tax Appeals Board concluded that the Conference was entitled to an exemption from general taxation on the four lots owned by the Conference, pursuant to the provisions of subsections 7 and 9 of § 57–02–08, N.D.C.C., and the Tax Appeals Board ordered that the taxes paid by the Conference for the year 1973 on these four lots be abated and be refunded.

The County appealed the decision of the Tax Appeals Board to the Stutsman County District Court. After a hearing, the district court held that the four residential lots owned by the Conference did not qualify for an exemption status under either subsection 7 or subsection 9 of § 57–02–08, N.D.C.C., and reversed the order of the Tax Appeals Board. The Conference appeals from such judgment of the district court.

The only issue for decision in this appeal is whether the property owned by the Conference and used as residential housing by elders in charge of statewide religious services of the religious corporation is exempt from taxation pursuant to either subsection 7 or subsection 9 of § 57–02–08, N.D.C.C.; or both subsections.

The pertinent provisions of § 57–02–08, N.D.C.C., are:

"*Property exempt from taxation.*—All property described in this section to the extent herein limited shall be exempt from taxation, that is to say:

.        .        .        .        .

"7. All houses used exclusively for public worship, and lots or parts of lots upon which such buildings are erected, and any dwellings belonging to religious organizations intended and ordinarily used for the residence of the bishop, priest, rector, or other minister *in charge of the services of the church,* together with the lots upon which the same are situated;

.        .        .        .        .

"9. All real property, not exceeding two acres in extent, owned by any religious corporation or organization, upon which there is a building used for the religious services of such organization, or upon which there is a dwelling with usual outbuildings, intended and ordinarily used for the residence of the bishop, priest, rector, or other minister *in charge of such services,* shall be deemed to be property used exclusively for religious services, and exempt from taxation, whether such real property consists of one tract or more. All taxes assessed or levied on any such property, while the same was so used for religious purposes, are void and of no effect, and must be canceled. All personal property of any religious corporation or organization used for religious purposes is exempt from taxation;" [Emphasis supplied.]

The County's contention is that the lots and houses owned by the Conference, which

are the subject of this action, do not fall within the purview of either subsection 7 or subsection 9 of § 57–02–08, N.D.C.C., because the elders residing in such houses are not "in charge of the services of the church" or "in charge of such services" as those phrases are used in the statute. The County asserts that such language restricts the tax exemption to those houses used as residences by a minister who is assigned to a particular church building or congregation and "in charge of" conducting regular public worship services in said church building for such congregation.

Section 176 of the North Dakota Constitution mandates the exemption from taxation of property used exclusively for religious purposes. Subsections 7 and 9 of § 57–02–08, N.D.C.C., are legislative enactments implementing this constitutional mandate, and they set forth the particular property entitled to exemption from general ad valorem taxation. In the instant case, however, no constitutional issue is raised by either party. This dispute involves only the construction and application of the statutory language contained in subsections 7 and 9 of § 57–02–08, N.D.C.C.

The application and construction of subsections 7 and 9 of § 57–02–08, N.D.C.C., was also the issue decided by this Court in *Lutheran Campus Council v. Board of County Commissioners, Ward County,* 174 N.W.2d 362 (N.D.1970), in which case the Court set forth the rule of construction to be followed, saying, in 174 N.W.2d at pages 365–366:

"As we approach the construction of our statute and its application to the facts of this case, we bear in mind the rules that the burden is on the claimant of a tax exemption to establish the exempt status of his property and that the laws under which such an exemption is claimed will receive a strict construction against the claimant. *North Dakota Soc. for Crippled Child. & Ad. v. Murphy,* 94 N.W.2d 343, 345 (N.D.1959). However, with regard to the rule of strict construction, the Supreme Court of Nebraska

stated, in *Lincoln Woman's Club v. City of Lincoln,* 178 Neb. 357, 133 N.W.2d 455, 459 (1965):

" 'It is well settled that provisions exempting property from taxation are to be strictly construed; that their operation should not be extended by construction; and that the power and right of the state to tax are presumed and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. [Citation omitted.]

" 'The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. A liberal and not a harsh or strained construction is to be given to the terms "educational," "religious," and "charitable" in order that the true intent of the constitutional and statutory provisions may be realized. The judicial interpretation of such statute should always be reasonable.'

We believe that the Nebraska approach to the problem of determining the breadth of tax exemption statutes is the correct one and we apply it here. We so hold especially in light of § 1–02–01, N.D.C.C., which provides:

" 'The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice.' "

■ This Court also held in *Lutheran Campus* that the phrase "the services of the church" relates to the incorporeal and is not limited to an edifice. *Accord, Petition of Board of Foreign Missions*, 221 Minn. 536, 22 N.W.2d 642, 645 (1946). Therefore, the property in question in the instant case would be exempt from taxation, pursuant to Subsection 7 of § 57–02–08, N.D.C.C., if the persons residing in the Conference's houses are ministers who are "in charge of the services of the church" carried on by the church in its program to advance religion as a way of life for all persons; and such property would be likewise exempt from taxation, pursuant to Subsection 9 of § 57–02–08, N.D.C.C., if the persons residing in the Conference's houses are ministers who are "in charge of such [religious] services [of the organization]". *Cf., Petition of Board of Foreign Missions, supra.*

We have reviewed the exemption from taxation accorded to ministerial residences in other States, and note from a perusal of the Annotation entitled "Taxation: Exemption of Parsonage or Residence of Minister, Priest, Rabbi, or other Church Personnel", at 55 A.L.R.3d 356, that those States which limit the exemption to houses occupied by ministers assigned to a particular church building do so under the particular terms of those States' exemption statutes or because of constitutional limitations not present in our Constitution. *See, e. g., Harmon v. North Pac. Conf. of 7th Day Adventists*, 462 P.2d 432 (Alaska 1969).

■ In the instant case, it is clear that all four elders are ordained ministers who are assigned special supervisory—as well as direct spiritual—duties directly related to all aspects of the operation of the church as a living institution. The evidence is uncontradicted that these elders both supervise other ministers and also minister directly to church members, although their assignments as to locale may vary from week to week. The evidence also shows that all of the lots owned by the Conference are less than two acres in size, that the dwellings are used as residences for the Conference's ministers and that no profit from their occupancy is realized by the Conference. In addition, there is nothing in the record which asserts that the Conference is not the owner of the buildings in which the elders' services are carried out or conducted.

■ We think it is clear that the elders were "in charge of the services of the church" as that phrase is used in subsection 7 of § 57–02–08, N.D.C.C. As part of its statewide services, the Conference assigned these elders to positions which place them in charge of the church's temperance work, its welfare and missionary work, its Sabbath schools and Bible studies; and in charge of the church's evangelistic and stewardship programs. Furthermore, we believe it is also clear that the Conference's elders were "in charge of such [religious] services [of the religious corporation]" as that phrase is used in subsection 9 of § 57–02–08, N.D.C.C. These ministers conducted at least one public worship service per week, although they were not assigned to a particular congregation. Those services are certainly religious services of a religious corporation, as contemplated by subsection 9 of § 57–02–08, N.D.C.C.

We believe that the Conference has met its burden and has established that the residential property owned by the Conference, which is the subject of this action, qualifies for an exemption from taxation pursuant to both subsections 7 and 9 of § 57–02–08, N.D.C.C.

If the Legislature had intended to further restrict the exemption available under subsections 7 and 9 of § 57–02–08, N.D.C.C., it could easily have done so by including additional requirements in the statute itself.

The judgment of the district court is reversed and the order of the North Dakota Tax Appeals Board is hereby affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.