TAXATION: INDIAN LANDS: The exemption from ad valorem taxation for Indian lands in Minn. Stat. § 272.01. subd. 1 applies only to lands held in trust by the United States for the benefit of an Indian Tribe, its members, or an individual Indian, and lands owned by an Indian Tribe or an individual Indian subject to federal statutory restraints on alienation. The exemption does not apply to lands owned in fee simple title by Indian Tribes or individual Indians.

May 4, 1993

414A-5

Mr. Gerald S. Paulson
Mahnomen County Attorney
Mahnomen County Courthouse
P.O. Box 439
Mahnomen, MN 56557

Dear Mr. Paulson:

In your letter to the Attorney General, you state substantially the following:

## FACTS

Fee title to certain real property located within Mahnomen County is held by individual Indians.[1] Fee title to other real property in the county is variously held in the name of the Minnesota Chippewa Tribe, the White Earth Band of Chippewa, the governing body of the Tribe or Band, or in other names or designations indicating tribal interest or ownership. Additionally, title to other land is held by the United States in trust for the use and benefit of individual Indians or the White Earth Band.

Following the decision of the United States Supreme Court in County of Yakima v. Yakima Indian Nation, ___ U.S. ___, 112 S. Ct. 683 (1992), the Minnesota Department of Revenue issued a memorandum dated March 11, 1992 informing county officials that based on the Yakima case, all Indian reservation land owned in fee by individual Indians or by an Indian tribe is subject to ad valorem taxation, and that these lands should be classified and valued in the same way as other similar real property.[2] In September, 1992, you contacted the

---

1. There is no single statutory or judicial definition of "Indian." For purposes of this opinion, "Indian" refers to an enrolled member of a federally recognized tribe. Felix S. Cohen, Handbook of Federal Indian Law 19 (1982 ed.)

2. The conclusion of the U.S. Supreme Court that the County of Yakima, Washington was entitled to impose ad valorem taxes on fee land owned by individual Indians and by the Yakima Indian Nation was based on provisions of the Indian General Allotment Act of 1887 (also known as the Dawes Act), 24 Stat. 388, as amended, 25 U.S.C. § 331 et. seq. and the Burke Act of 1906, 34 Stat. 182. The Court found express authority for taxation of fee-patented land on which any period of trusteeship has expired in § 6 of the General Allotment Act, as amended, 25 U.S.C. § 349. The Court's reasoning thus presumably applies to any lands owned in fee title traceable to patents distributed pursuant to the General Allotment Act. Although we assume that the holding also applies to fee titles originating in patents issued under other federal laws either incorporating the provisions of the General Allotment Act or containing similar language expressly permitting taxation (e.g., the Nelson Act, 25 Stat. 642), it is likely that differences in allotment acts will provide a basis for future litigation.

Department of Revenue to inquire as to the meaning of the term "Indian Lands" as used in Minn. Stat. § 272.01, subd. 1, which states: "All real and personal property in this state, and all personal property of persons residing therein, including the property of corporations, banks, banking companies, and bankers, is taxable, except Indian lands and such other property as is by law exempt from taxation." (emphasis added). The Department responded in a letter dated September 30, 1992, that its position is that the statute exempts only lands held in trust by the federal government for the use and benefit of Indians and to lands owned in "restricted" status.[3]

The Mahnomen County assessor has inquired how to classify Indian-owned land located in the county in light of these communications and the provisions of Minn. Stat. § 272.01, subd. 1 (1992).

You have indicated that Mahnomen County has, for many years, assessed ad valorem taxes on fee title lands owned by individual Indians. The county has not taxed fee title real estate owned by the Minnesota Chippewa Tribe or the White Earth Band, however, believing that such lands may be exempt under applicable State and/or federal law. Now that there is apparently no federal impediment to ad valorem taxation of fee owned tribal lands,[4] the county assessor has asked whether such lands are exempt from taxation under the above provision of Minnesota law.

You then ask the following:

## QUESTION

Does the exemption from ad valorem taxation of "Indian lands" in Minn. Stat. § 272.01, subd. 1 (1992) include any lands in addition to lands held in trust by the United States?

---

3.  Lands owned in restricted status means land subject to a restriction by the United States against alienation. The general restriction on alienation of Indian land derives from federal statutory law. See, e.g., 25 U.S.C. § 177: Felix S. Cohen, Handbook of Federal Indian Law 508 et. seq., (1982 ed.).

4.  We have been informed by the United States Department of the Interior, Office of the Field Solicitor in Minneapolis that the Bureau of Indian Affairs may take the position that, the Yakima decision notwithstanding, state and local governments have no jurisdiction to tax Indian owned fee land on Indian reservations. We were not informed of the legal basis for this position. The United States has appeared in several pending federal district court cases which raise the issue of local/state ad valorem taxation of lands owned in fee by Indian tribes. See e.g., Assiniboine and Sioux Tribes v. Montana, CV-89-271-BLG-JFB (D. Mont.); Blackfeet Tribe v. Adams, et al., CV-89-100-GF (D. Mont.); United States v. South Dakota and Todd County, Civ. 90-3017 (C.D. S. Dak.); United States v. Michigan, 91-CV-10103-BC (E.D. Mich.). The ultimate disposition of these cases in light of Yakima is not clear.

## OPINION

In our opinion, the term "Indian Lands" as used in Minn. Stat. § 271.01. subd. 1 (1992) includes only those lands title to which is held in trust by the United States for the benefit of an Indian tribe, its members, or an individual Indian, and lands owned by an Indian tribe or individual Indian subject to federal statutory restraints against alienation.

The "Indian lands" language was added to Minn. Stat. § 272.01. subd. 1 by the Minnesota Legislature in 1961.[5] Act of April 14, 1961, ch. 361, 1961 Minn. Laws 554. The 1961 legislation provides as follows:

### CHAPTER 361 -- H.F. No. 392

An act relating to taxation of real property, excluding Indian lands from taxation; amending Minnesota Statutes 1957, Section 272.01, as amended by Extra Session Laws 1959, Chapter 1, Section 1 and Chapter 85, Section 1.

Be it enacted by the Legislature of the State of Minnesota:

Section 1. Minnesota Statutes 1957, Section 272.01, as amended by Extra Session Laws 1959, Chapter 1, Section 1, and Chapter 85, Section 1, is amended to read:

272.01 **Property subject to taxation.** Subdivision 1. All real and personal property in this state, and all personal property of persons residing therein, including the property of corporations, banks, banking companies, and bankers, is taxable, except <u>Indian lands and</u> such <u>other property</u> as is by law exempt from taxation.

Subd. 2. When any real or personal property which for any reason is exempt from ad valorem taxes, and taxes in lieu thereof, is leased, loaned, or otherwise made available and used by a private individual, association or corporation in connection with a business conducted for profit; except where such use is by way of a concession in or relative to the use in whole or part of a public park, market, fair grounds, airport, port authority, municipal auditorium, municipal museum or municipal stadium there shall be imposed a tax, for the

---

5.  The territorial laws included a tax exemption for "the property of all Indians, who are not citizens, except lands held by them by purchase." Minn. Stat. ch. 9. Sec. IV.7. (1849-1858). This provision was repealed in 1865 with the wholesale revision in that year of statutory law. Report of the Revision Commission ch. 11, § 3.

privilege of so using or possessing such real or personal property, in the same amount and to the same extent as though the lessee or user was the owner of such property. Taxes imposed by this subdivision shall be due and payable as in the case of personal property taxes and such taxes shall be assessed to such lessees or users of real or personal property in the same manner as taxes assessed to owners of real or personal property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the state, township, city, village, county and school district for which the taxes were assessed and shall be collected in the same manner as personal property taxes.

Subd. 3. The provisions of subdivision 2 shall not apply to:

(a) Federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed;

(b) Real estate exempt from ad valorem taxes and taxes in lieu thereof which is leased, loaned, or otherwise made available to telephone companies or electric, light and power companies upon which personal property consisting of transmission and distribution lines is situated and assessed pursuant to sections 273.37, 273.38, 273.40 and 273.41, or upon which are situated the communication lines of express, railway, telephone or telegraph companies, and pipelines used for the transmission and distribution of petroleum products;

(c) Property presently owned by any educational institution chartered by the territorial legislature;

(d) Inventories of raw materials, work in process and finished goods and machinery and equipment owned by the federal government and leased, loaned or otherwise made available and used by private individuals, associations or corporations in connection with the production of goods for sale to the federal government;

(e) Indian lands.

(f) Property of any corporation organized as a Tribal Corporation under the Indian Reorganization Act of June 18, 1934. (48 Stat. 984).

Subd. 4. In the event that any of the provisions of subdivision 3 render this act unconstitutional, that portion of subdivision 3 shall be severable and of no effect.

Approved April 14, 1961.

The term "Indian lands" is not defined in the statute. nor does it have a common and widely accepted meaning. Although the term appears elsewhere in state and federal law. its meaning varies according to purpose of the statute in which it is used.[6] For most state. federal and tribal jurisdictional purposes. the governing legal term is "Indian country," defined in 18 U.S.C. § 1151. "Indian country" is defined as including (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent. and including rights-of-way through the reservation. (b) all dependent Indian communities within the borders of the United States. and (c) all Indian allotments, the Indian titles to which have not been extinguished.[7] This definition appears in

---

6.    For example, the term "Indian lands" is defined in the Indian Gaming Regulatory Act, 25 U.S.C. § 2703, ("IGRA") as including all lands within the limits of any Indian reservation. and any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power. The term "Indian lands" is also used in Minn. Stat. § 3.9221, authorizing the negotiation of tribal-state gambling compacts pursuant to the IGRA; Minn. Stat. § 240.13. subd. 9. authorizing transmission of horse racing telecasts to sites on Indian lands; and Minn. Stat. § 349.61. subd. 2. also relating to compacts governing gambling on Indian lands. Although these statutes do not provide a definition of "Indian lands" they were adopted in contemplation of the federal IGRA and presumably incorporate the IGRA definition. Other laws define the term differently (see, e.g., National Indian Forest Resources Management Act, at 25 U.S.C. § 3101 et. seq., in which "Indian lands" is defined to mean only land held in trust by the United States or by an Indian or tribe subject to a restriction by the United States against alienation).

7.    The meaning of the term "Indian country" has also varied over the years. It was initially used as a specific jurisdictional term in the 1834 Trade and Intercourse Act, Ch. 161, § 1, 4 Stat. 729. The 1834 definition was repealed in 1874, leaving the term subject to judicial interpretation until 1948, when the current federal definition was codified. The 1834 statutory definition of Indian country was expressly tied to Indian land title, which includes aboriginal occupancy, executive order reservations, lands in federal trust or restricted status, and the fee ownership of removal tribes and of the New Mexico Pueblo tribes. All such lands were subject to federal restrictions. In adopting the 1948 definition, which included land owned in unrestricted fee simple within Indian reservation boundaries, Congress changed the rule of prior case law as well as the 1834 definition. Felix S. Cohen, Handbook of Federal Indian law at 27 n.8, 35-36 (1982 ed.). However, a modified definition of "Indian country" was adopted in 1949 for purposes of the Indian country liquor prohibition laws. 18 U.S.C. §§ 1154, 1156. This definition excludes from Indian country fee patented lands within non-Indian communities and all rights of way,

Footnote 7 continued next page.

the federal criminal code section governing federal criminal laws applicable in Indian country. Later statutes delegating partial civil and criminal jurisdiction over Indian country to certain states used the same term, including principally Public Law 280, Act of Aug. 15, 1953, ch. 505, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360). Had the Minnesota Legislature intended to adopt the Federal statutory definition of "Indian country" for purposes of Minn. Stat. § 272.01, it would have used that term instead of the then undefined "Indian lands." Moreover, since Indian country includes all lands within the limits of any Indian reservation, including lands owned by non-Indians, an exemption for all lands within Indian country would have virtually eliminated the tax base in some counties, and exempted many properties for no apparent reason. By using the term Indian lands, the legislature clearly intended something more limited than the term Indian country as defined in federal law.

There are no reported cases construing the Indian lands provisions of Minn. Stat. § 272.01. The Minnesota cases relating to taxation of Indian property have focused exclusively on whether federal law prohibits or allows the imposition of such taxes.[8] In the absence of a statutory definition or controlling case law, we must construe the term "Indian lands" in order to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 provides that the intention of the legislature may be ascertained by considering, among other matters:

---

Footnote 7 continued.
    thus restoring part of the pre-1948 definition for liquor control purposes. Cohen, supra, at 45-46.

8. See, e.g., State of Minnesota v. ZayZah, 259 N.W.2d 580 (1977) (trust patent issued to Indian rendered his land free from taxation during the period of trust); Bryan v. Itasca County, 426 U.S. 373 (1976) (county not authorized under federal law to levy personal property tax on Indian resident's mobile home located on land held in trust by United States for members of Chippewa tribe).

(1)   The occasion and necessity for the law;

(2)   The circumstances under which it was enacted;

(3)   The mischief to be remedied;

(4)   The object to be attained;

(5)   The former law, if any, including other laws upon the same or similar subjects;

(6)   The consequences of a particular interpretation;

(7)   The contemporaneous legislative history; and

(8)   Legislative and administrative interpretations of the statute.

Contemporaneous legislative history of the Indian lands exemption is sparse. House file 392, the bill containing the exemption, was authored by Representative Harry Basford.[9] The minutes of the House Committee on Taxes, to which the bill was referred, include the following entry from its March 9, 1961 meeting:

> H.F. 392.  Representative Harry Basford, author, explained that legislation was passed last session of the Legislature that provided that lands not in use but owned by the State and leased to farmers should no longer be tax exempt while such farmer is using the land. This included Indian lands owned by the Tribal Council. This bill provides that such lands shall be tax exempt. Mr. Art Roemer stated that his department has no objection to this bill. However, in drafting the bill part of the law was inadvertently omitted.[10] An amendment was drawn to correct this matter. Mr. Jack Peterson moved the adoption of the amendment. Mr. Tiemann seconded the motion. Motion carried. See Committee Report for amendment. Mr. Tiemann then moved that H.F. 392 as amended be recommended to pass. Mr. Bergeson seconded the motion. Motion carried.[11]

---

9.   Representative Basford represented Becker County in the Minnesota Legislature from 1949-1961. Minnesota Legislative Manual 1961-62. He also chaired the Legislative Interim Committee on Indian Affairs. Minnesota Legislative Manual 1957-58.

10.  The inadvertent omission referred to is apparently Minn. Stat. § 272.01, subd. 3(d), relating to inventory owned by the federal government, and adopted in the 1959 special session. Act of July 2, 1959, chapter 85, 1959 Minn. Laws. Ex. Sess. 1900.

11.  Records of the Minnesota Legislature, Minnesota State Archives, Minnesota History Center.

There is no other substantive legislative history of H.F. 392 or its companion Senate Bill. S.F. 707.

This explanation of the bill by its author strongly suggests that the purpose of House File 392 was to correct a problem which had arisen as a result of legislation passed during the 1959 session of the legislature. The legislation referred to by Mr. Basford is Minn. Stat. § 272.01, subds. 2 and 3, enacted during the 1959 Extra Session of the Minnesota Legislature, Act of May 1, 1959, ch. 1, 1959 Minn. Laws Ex. Sess. 1397, which provides as follows:

EXTRA SESSION

CHAPTER 1 -- H.F. NO. 37

An act relating to the taxation of exempt real and personal property leased, loaned or made available to individuals, associations or corporations in connection with a business conducted for profit; amending Minnesota Statutes 1957, Sections 272.01 and 273.19.

Be it enacted by the Legislature of the State of Minnesota:

Section 1. Minnesota Statutes 1957, Section 272.01, is amended to read:

272.01 Property subject to taxation. Subdivision 1. All real and personal property in this state, and all personal property of persons residing therein, including the property of corporations, banks, banking companies, and bankers, is taxable, except such as is by law exempt from taxation.

Subd. 2. When any real or personal property which for any reason is exempt from ad valorem taxes, and taxes in lieu thereof, is leased, loaned, or otherwise made available and used by a private individual, association or corporation in connection with a business conducted for profit; except where such use is by way of a concession in or relative to the use in whole or part of a public park, market, fair grounds, airport, port authority, municipal auditorium, municipal museum or municipal stadium there shall be imposed a tax, for the privilege of so using or possessing such real or personal property, in the same amount and to the same extent as though the lessee or user was the owner of such property. Taxes imposed by this subdivision shall be due and payable as in the case of personal property taxes and such taxes shall be assessed to such lessees or users of real or personal property in the same manner as taxes assessed to owners of real or personal property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or

user to the state, township, city, village, county and school district for which the taxes were assessed and shall be collected in the same manner as personal property taxes.

Subd. 3. The provisions of subdivision 2 shall not apply to:

(a) Federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed;

(b) Real estate exempt from ad valorem taxes and taxes in lieu thereof which is leased, loaned or otherwise made available to telephone companies c electric, light and power companies upon which personal property consisting of transmission and distribution lines is situated and assessed pursuant to sections 273.37, 273.38, 273.40 and 273.41, or upon which are situated the communication lines of express, railway, telephone or telegraph companies, and pipelines used for the transmission and distribution of petroleum products;

(c) Property presently owned by any educational institution chartered by the territorial legislature.

Subd. 4. In the event that any of the provisions of subdivision 3 render this act unconstitutional, that portion of subdivision 3 shall be severable and of no effect.

Sec. 2. Minnesota Statutes 1957, Section 273.19, is amended to read:

273.19 **Lessees and equitable owners.** Property held under a lease for a term of three or more years, and not taxable under section 272.01, subdivision 2, or under a contract for the purchase thereof, when the property belongs to the state, or to any religious, scientific, or benevolent society or institution, incorporated or unincorporated, or to any railroad company or other corporation whose property is not taxed in the same manner as other property, or when the property is school or other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same.

Sec. 3. The provisions of this act shall apply to taxes for the year 1959 and subsequent years.

Approved May 1, 1959.

These provisions impose a privilege tax (sometimes called a "beneficial use tax") on lessees of otherwise tax exempt real estate who use the property for profit-making purposes.[12] Unlike ad valorem taxes, the privilege tax on the lessee's use or possessory interest does not become a lien on the real estate. The owner of the real estate cannot lose the land in a tax forfeiture proceeding. The unpaid privilege tax is a personal debt of the lessee owed to the taxing authority. In all other respects, however, the privilege tax is equivalent to ad valorem taxes on the same property, and is assessed in the same manner.

As a result of the privilege tax, a person or entity owning otherwise tax exempt real estate cannot pass the benefits of the exemption along to someone leasing the property for profit-making purposes. The parties to the lease will have to take account of the economic impact of the privilege tax in negotiating the terms of the lease, and the tax exempt land owner loses any advantage he might have had in being able to offer lower lease payments due to property tax savings.

Certain property was not subject to the privilege tax. In Minn. Stat. § 272.01, subd. 3, the legislature carved out certain exceptions for lands (and by extension, landowners) on which the legislature did not want to impose either ad valorem property taxes or the equivalent privilege tax. When the privilege tax was initially adopted in 1959, three types of property were exempted: certain federal property, real estate used by utilities for transmission and distribution lines, and property owned by certain educational institutions. The privilege tax exemptions in Minn. Stat. § 272.01, subd. 3 did not create new exemptions to ad valorem

---

12. Minn. Stat. § 272.01, subd. 2 is an almost verbatim adoption of the Michigan provision approved in United States v. City of Detroit, 355 U.S. 466 (1958), which upheld a statute providing for real property taxation of business leases of tax exempt property as applied to a lessee of federally owned land. See Grava v. County of Pine, 268 N.W.2d 723, 727 (1978).

property taxes. The privilege tax exemptions applied only to certain categories of real estate already exempt from ad valorem taxation under some other provision of law.

From his reported remarks, we conclude that Representative Basford intended House File 392 to relieve otherwise exempt Indian lands from the privilege tax. He wished to preserve the benefit of existing exemptions for Indian lands by insuring that the privilege tax would not be imposed even if the land was rented or leased for profit-making purposes.[13] This conclusion is also supported by contemporaneous resolutions adopted by two tribal governing bodies in support of the bill. Resolution No. 21-61 of the Red Lake Tribal Council provides as follows:

### RESOLUTION NO. 21-61

WHEREAS, The Minnesota State Legislature, in the 1959 Extra Session of the Legislature, amended Minnesota Statutes 1957, Section 272.01, and thereby attempted to cause taxation of Indian Trust Land when said land or personal property was leased or loaned for business purposes, and

WHEREAS, The imposition of such taxation on Tribal, Band or individually owned land or personal property is considered to be an infraction of Indian rights permitted them by the United States Government, and

WHEREAS, The imposition of taxes impedes the function of Tribal, Band and individual land operations, making it difficult to lease Indian properties for revenues accruing to the Indians, and

WHEREAS, Mr. Harry Basford, State Representative, introduced in the 1961 Legislature, a Bill which will alleviate the taxation of Indian Trust Land and

---

13. The purpose and effect of the exemption from the privilege tax for property of any corporation organized as a Tribal Corporation under the Indian Reorganization Act of June 18, 1934 in Minn. Stat. § 272.01, subd. 3(f) is not clear. If such property is not included within the general exemption for "Indian lands" in Minn. Stat. § 272.01, subd. 1, then the property is not exempt from ad valorem taxation under state law and the privilege tax imposed by § 272.01, subd. 2 does not apply (unless some other provision of state or federal law exempts the property from state ad valorem taxation). If, on the other hand, property owned by a Tribal Corporation is included within the term "Indian lands," then it is also covered by the exemption from the privilege tax for Indian lands in Minn. Stat. § 272.01, subd. 3(e), and no additional exemption is needed.

properties, said Bill referred to as F.[sic] No. 392, Companion S.F. --- and which was referred to Senate Committee on taxes.

NOW, THEREFORE, BE IT RESOLVED, That the Red Lake Tribal Council hereby respectfully request the Governor of the State of Minnesota, the State Senators, and the State Representatives, to support the amended Bill as aforementioned, in the interest of raising the standard of living for Indians living on Trust Lands and also to alleviate the possibility of future Court actions thereby the Indians believe that their Federal Trust Lands, and attachments owned by them to said land, are free from encumbrances of taxation by the State of Minnesota.

For: 8 - Against: 0

We do hereby certify that the foregoing resolution was duly presented and enacted upon at the regular meeting of the Red Lake Tribal Council held on March 21, 1961, with a quorum present, at the Red Lake Council Hall, Red Lake, Minnesota.

/s/Roger A. Jourdain
Roger A. Jourdain, Chairman
Red Lake Tribal Council


/s/Otto Thunder
Otto Thunder, Secretary
Red Lake Tribal Council

A similar resolution was adopted by the White Earth Reservation Council on March 25, 1961.

## RESOLUTION NO. 2

Whereas, the Minnesota State Legislature, in the 1959 Extra Session of the Legislature, amended Minnesota Statutes 1957, Section 272.01, and thereby attempted to cause taxation of Indian Trust land when said land or personal property was leased or loaned for business purposes, and

WHEREAS, the imposition of such taxation on Tribal, Band or individually owned land or personal property is considered to be an infraction of Indian rights permitted them by the United States Government. and

WHEREAS, the imposition of taxes impedes the functions of Tribal, Band and individual land operations, making it difficult to lease Indian properties for revenues accruing to the Indians. and

WHEREAS, State Representative Harry Basford. sponsored in the 1961 Legislature. a Bill which will alleviate the taxation of Indian Trust land and properties, said Bill referred to as H.F. 392, and Senate Companion Bill S.F. 707. sponsored by Senators Lofvegren. McKee and Walz, and both Bills referred to their respective tax committees.

NOW. THEREFORE. BE IT RESOLVED, That the White Earth Reservation Council hereby requests the Governor of the State of Minnesota, the State Senators and State Representatives. to support the amended Bill as aforementioned, in the interest of raising the standard of living for Indians living on Trust land and also to alleviate the possibility of future Court actions whereby the Indians believe that their Federal Trust lands, and attachments owned by them to said land, are free from the encumbrances of taxation by the State of Minnesota,

BE IT FURTHER RESOLVED, That copies of this resolution be forwarded to the Governor of the State of Minnesota, State of Minnesota Legislative Commission, and Members of the State Legislature representing the counties of Becker, Clearwater and Mahnomen Counties.

/s/Simon Bishop
Simon Bishop - President
White Earth Reservation Council

CARRIED:

Mr. Gerald S. Paulson
Page - 14 -

We do hereby certify that the foregoing resolution was duly presented and enacted upon at a regular meeting of the White Earth Reservation Council, held on March 25, 1961, at White Earth, Minnesota.

/s/Frances Keahna
Frances Keahna - Secretary
White Earth Reservation Council

S E A L:

These resolutions were forwarded to Mr. Basford on March 22, 1961 and March 25, 1961 respectively, by the tribal organizations.[14]

These resolutions indicate that, in the view of these affected Indian organizations, the purpose of H.F. 392 was to preserve the advantages of property tax exemption for trust lands leased for business purposes. While not necessarily dispositive of legislative intent, the tribal resolutions and the minutes of the House Committee on Taxes clearly indicate the occasion and necessity for the law, the circumstances in which it was enacted, and the object to be obtained. The bill does not appear to have been intended to extend the property tax exemption to lands which were not considered to be tax exempt before the adoption of the 1959 privilege tax provisions. Instead, it was intended to preserve the benefits of property tax exemption for Indian lands previously considered to be exempt, namely, trust lands.

In 1961 the state's authority to tax reservation Indians respecting other than their trust property was not clear. It was clear, however, that so-called "trust lands," or lands held by the United States in trust for the use and benefit of Indian tribes, or individual Indians, could not be taxed. The New York Indians, 72 U.S. (5 How.) 761 (1867); The Kansas Indians,

---

14. Papers of Representative Harry Basford, Northwest Center Archives, Moorhead State University, Moorhead, Minnesota.

72 U.S. (5 How.) 737 (1867); United States v. Rickert, 188 U.S. 432 (1903); Oklahoma Tax Commission v. United States, 319 U.S. at 598, 602-603 (1943). The same reasoning applied to restricted status lands. Board of Commissioners v. Seber, 318 U.S. 705 (1943).

At the same time, there was authority for state taxation of leasehold or possessory interests in trust lands, at least where the lessee was non-Indian. United States v. City of Detroit, 355 U.S. 466 (1958); United States v. Erie County, 31 F.Supp. 57 (W.D.N.Y. 1939). Congress had expressly authorized the leasing of individual or tribe owned restricted Indian lands. Act of August 9, 1955, ch. 615, § 1, 69 Stat. 539, 25 U.S.C. § 415. The leasing of unalloted trust lands for certain purposes such as mining and grazing was also permitted. See, e.g., 25 U.S.C. §§ 393, 396a. When Congress granted general civil jurisdiction to other activities on reservation lands in 1953, it codified the long-standing federal bar to ad valorem taxation of trust land, but left unclear the states' authority to tax other interests, such as leaseholds. Pub. L. 280, § 4, 67 Stat. 589, 28 U.S.C. § 1360.[15]

In this context, the intent of the Legislature in adopting H.F. 392 in 1961 was to resolve any uncertainty as to the tax status of leasehold interests in Indian lands held in trust, and to insure that such lands would not lose the advantages of their tax-exempt status when leased. The legislative history does not suggest that in adopting the "Indian lands" exemption, the legislature intended broadly to exempt categories of lands which previously had been taxed.

---

15. Later cases established that Pub. L. 280 was not a general grant of authority to the states to impose personal property taxes on Indian owned property located on Trust lands. Bryan v. Itasca County, 426 U.S. 373 (1976). However, other cases have continued to support the authority of state and local governments to tax non-Indian leasehold interests in Trust or restricted status lands. Fort Mohave Tribe v. County of San Bernadino, 543 F.2d 1253 (9th Cir. 1976) cert. denied 430 U.S. 983 (1977); Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184 (9th Cir. 1971), cert. denied 405 U.S. 933 (1972); Chief Seattle Properties, Inc. v. Kitsap County, 541 P.2d 699 (1975).

Moreover, other possible constructions of the exemption raise significant difficulties. If "Indian lands" were interpreted to include all lands within the boundaries of an Indian reservation, many lands historically taxed, such as lands owned in fee by non-Indians and by individual Indians, would go untaxed. The tax bases of counties with reservation lands would be seriously eroded, a result surely not intended by the legislature.

If "Indian lands" were construed to include any lands owned by a tribe or band, there would be no clear grounds for distinguishing tribal fee ownership from individual fee simple title ownership. As one commentator has observed, "The term 'Indian lands' refers to those lands that are held by Indians or tribes under some restriction or with some attribute peculiar to the Indian status of its legal or beneficial owners. Today any Indian can purchase real property (such as a residence in Phoenix or Chicago) in the public market and thereby acquire fee title that is freely disposable. That real property is not 'Indian land.'" William C. Canby, Jr., American Indian Law in a Nutshell, 256 (2d ed. 1988).

In contrast, a construction of "Indian lands" which limits its application to lands held in trust or subject to federal restrictions on alienation does not raise these difficulties. It recognizes attributes of land title peculiar to the Indian status of its legal or beneficial owners, and thereby effectuates the intent of the legislature in adopting House File 392 in 1961.[16]

This conclusion is also supported by the doctrine that exemptions to taxation are to be narrowly construed. Great Northern Railway v. Minnesota, 216 U.S. 206, 221 (1910); Camping and Education Foundation v. State, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969); Ramaley v. City of St. Paul, 226 Minn. 406, 412, 33 N.W.2d 19, 23 (1948); DePonti Aviation, Inc. v. State, 280 Minn. 30, 34; 157 N.W.2d 742, 746 (1968). Because the term

---

16. This view is also consistent with early judicial recognition that Indian lands are lands whose sale, if not consented to by the sovereign (the United States and its European predecessors), can give the purchaser no valid title as against the sovereign. Johnson v. McIntosh, 8 Wheat 543, 5 L.Ed. 681 (1823).

Mr. Gerald S. Paulson
Page - 17 -

"Indian lands" is ambiguous, and because the available legislative history strongly indicates that the limited purpose of the 1961 legislation establishing the exemption was to avoid application of the 1959 privilege tax amendments to Indian trust lands, we have concluded that the term "Indian lands," as used in Minn. Stat. § 272.01, subd. 1 does not apply to lands other than trust or restricted status lands.

In conclusion, the exemption for Indian lands from ad valorem property taxation in Minn. Stat. § 272.01, subd. 1 is intended to apply only to lands held in trust by the United States for the benefit of individual Indians or Indian tribes, or subject to restrictions on alienation, and does not include individual or tribal lands held in fee.

Very truly yours,

HUBERT H. HUMPHREY, III
Attorney General

GREGORY P. HUWE
Assistant Attorney General