In re COLLECTION OF DELINQUENT
REAL PROPERTY TAXES.

STATE of Minnesota, County
of Hennepin, Respondent,

v.

AMERICAN FUNDAMENTALIST
CHURCH, Relator.

No. C4–93–2575.

Supreme Court of Minnesota.

April 21, 1995.

Randall D.B. Tigue, Minneapolis, for relator.

Michael O. Freeman, Hennepin County Atty., Elizabeth Elder, Asst. County Atty., Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

This case is the culmination of several years of dispute between the taxing authorities and relator American Fundamentalist Church (AFC). After a tax court determination that the property owned by AFC was not used principally for church purposes and therefore the property was not exempt from property taxes, AFC failed to pay the taxes on the property. A forfeiture proceeding was commenced against AFC for the delinquent property taxes. In the forfeiture proceeding, AFC again claimed that as a church, its property was exempt from property taxes. The tax court determined that AFC was not a church and again denied the property tax exempt status. On appeal, we affirm.

American Fundamentalist Church, a religious corporation, is the record owner of the subject real property, a single-family dwelling located at 15187 Valley View Road, Eden Prairie, Minnesota. The current action is the culmination of a lengthy effort by Hennepin County to enforce collection of delinquent property taxes on the subject property. On July 22, 1981, AFC filed a Minn.Stat. ch. 272 tax petition requesting tax exempt status as a church property. The matter was tried and the petition was denied. *American Fundamentalist Church v. County of Hennepin*, 1983 WL 1050 (Minn.T.C.1983), *aff'd without opinion*, File No. CX–83–750 (Minn.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Nevertheless, AFC failed to pay taxes on the property at issue, and on February 15, 1985, forfeiture proceedings were commenced against AFC. A default judgment was entered against the property in April 1985, but due to certain procedural errors by the county, the matter was dismissed. On February 15, 1989, this action

was commenced in district court, which subsequently transferred the case to the tax court. The sole issue before the tax court was whether the property was tax exempt as a church rectory.

The AFC was incorporated in 1980 as a religious corporation, pursuant to Minn.Stat. ch. 315, by Douglas Page and his wife, and Reverend Jon L. Frayne, persons previously associated with another religious organization, the Basic Bible Church (BBC). They had made an earlier unsuccessful attempt to claim the subject property as tax-exempt church property.[1] Page and his wife transferred the subject property to AFC at the time of its incorporation.

The original Articles of Incorporation for the AFC described the objectives of the organization as follows:

> The general purpose of the church shall be religious worship and meditation, which shall include the promotion of the tenets of Jesus Christ as set forth in the Holy Bible, the teaching and study of the principles set forth in the Holy Scriptures of the Church, the extension of the Christian influence, the dissemination of the biblical message, and the inculcation of high moral standards among the members of the public.

In 1980 the articles were amended to include the following language:

> This church is organized and in all respects shall be operated exclusively for religious purposes, as defined by I.R.C. 501(c)(3), and for those associated, attendant and consistent purposes specified in I.R.C. 501(c)(3) and only for such purposes. It shall not engage, other than as an insubstantial part of its activities, in any activities which in themselves are not in furtherance of one or more exempt purposes. No part of its net earnings shall inure to the benefit of private shareholders or individuals as those terms are defined in Regulation 1.501(a)–1(c).

At trial there was testimony regarding the formation of AFC, its history, its governance structure and its activities as a religious organization. Page testified that the purpose of forming the religious corporation was to advance what the organizers believed was a right direction concerning moral and social issues.

Page had been ordained as a minister of the AFC by Rev. Jon Frayne, although Page did not have extensive theological education or training. As the head of the AFC and minister in charge, Page had the power to determine who would be a member of the AFC, the ability to discipline members by excommunication or otherwise and to formulate and proscribe religious doctrine, and the authority to fill vacancies on the Board of Trustees.

The management of AFC was assigned to the Board of Trustees which was to be composed of no fewer than three nor more than seven church members. The Board carried out the business of the church. In 38 of the 42 board meetings for which minutes were available to the tax court, only three board members were present: Page, his wife and one other trustee. The only board member to attend every board meeting from 1980–84 was Page, and the minutes demonstrate that Page made unilateral decisions. The board minutes also indicate that the meetings consisted mainly of discussions of pending tax matters, including the selection of counsel, legal strategies and fund-raising to pay for the litigation.

Weekly "services" were conducted by either Page or Frayne. They included scriptural or other relevant readings, a sermon by the minister or a guest speaker, and an open discussion of current events, or other government issues or religious topics. Participation ranged from almost no one to as many as fifty. In July 1981, the services were moved from the subject property to another private home in Golden Valley, Minnesota, owned by Frayne.

Page testified at trial that AFC made significant efforts to recruit new members including advertising in church directories and

---

1. The BBC operated from the same home which is the subject of this matter; tax exemption of the home under the ownership of the BBC was denied in *Basic Bible Church of America Chapter 8035 v. County of Hennepin*, File No. 0649 (Minn. T.C. Apr. 21, 1980), *aff'd without opinion*, File No. 51660 (Minn.1981), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

local newspapers. The effort to obtain new members met with varying degrees of success. In addition, AFC circulated religious literature to the public at large, and distributed food to the needy. Both Page and Frayne testified that they had performed weddings, and that they were involved in counseling of church members.

In addition to serving as the Minister of the AFC, Page also worked as a private consultant in the field of forensic engineering. His business card listed the AFC phone number, identified him as a "Forensic Engineer Investigator" for "Engineering Investigations and Research Incorporated," but did not mention AFC. He received a $400 monthly stipend from AFC, along with living quarters, a car, and an airplane. Most of the financial contributions to the AFC came from Page, and most of his income came from the AFC. For income tax purposes, Page reported only his stipend from AFC and the taxable value attributable to the personal use of the AFC automobile.[2]

Both prior to and after the transfer of the subject property to AFC, the Pages used the building, a two-story structure, as their home. The upper story includes the bedrooms, kitchen and living area which were used by the Pages. The basement contains a recreation room and offices which were used for AFC office space, board meetings and church services and for other, unrelated purposes.

On appeal AFC raises a number of issues, principally that AFC is a "church" within the meaning of Minn.Stat. § 272.02, subd. 1(5) and Minnesota Constitution Article 10, Section 1, and therefore its property is tax exempt. It challenges the tax court's decision that AFC was not a church within the meaning of Minnesota tax law, but rather a "tax avoidance devise cloaked in religious garb." AFC also asserts that the tax court improp-

erly dismissed its counterclaim and that it improperly dealt with a discovery matter. It further claims that the tax court judge should have recused himself from consideration of the case.

■■■ The tax court's factual findings and legal rulings are to be upheld "where sufficient evidence exists for the tax court to reasonably reach the conclusion it did." *American Ass'n of Cereal Chemists v. County of Dakota*, 454 N.W.2d 912, 914 (Minn. 1990). Whether an organization is actually formed and operated as a tax exempt institution is primarily a question of fact. *Parker v. Comm'r*, 365 F.2d 792 (8th Cir.1966), *cert. denied*, 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967).

In Minnesota, property is presumed to be taxable unless specifically exempt by law. Minn.Stat. § 272.01, subd. 1 (1992); *Camping & Educ. v. State*, 282 Minn. 245, 248, 164 N.W.2d 369, 372 (1969). Church property qualifies for tax exemption under both Minn. Stat. § 272.02, subd. 1(5) (1989 & 1995 Supp.) and Minn. Const. art. 10, § 1.[3] Minn.Stat. § 272.02, subd. 1(5) reads as follows:

All property described in this section to the extent herein limited shall be exempt from taxation * * * all churches, church property, and houses of worship.

Minnesota Constitution Article 10, Section 1 provides that:

[C]hurches, church property, houses of worship, * * * shall be exempt from taxation except as provided in this section.

Both church buildings and church parsonages have been held exempt, *State v. Second Church of Christ, Scientist*, 185 Minn. 242, 240 N.W. 532 (1932), as has other residential property determined to be reasonably necessary and appropriate for accomplishment of church objectives. For example, in *Victory Lutheran Church v. County of Hen-*

---

2. This practice was disapproved in *Page v. Comm'r of Revenue*, 51 T.C.M. 1351, 1986 WL 21988 (1986). At trial, Page testified that after this decision he ceased the practice of not reporting his personal income and is in the process of amending his 1989 tax return to reflect the change in income.

3. The United States Supreme Court has ruled that tax exemption of churches and church properties does not violate the Establishment Clause or the Free Exercise Clause of the First Amendment stating, "[the property tax exemption is] neither the advancement nor the inhibition of religion; it is neither sponsorship nor hostility." *Walz v. Tax Comm'n*, 397 U.S. 664, 672, 90 S.Ct. 1409, 1413, 25 L.Ed.2d 697 (1970).

*nepin,* 373 N.W.2d 279 (Minn.1985), we concluded that a residence occupied by a church's unpaid part-time janitor is tax exempt. However, property owned by a church but not used for church purposes is denied exempt status. *State v. Union Congregational Church,* 173 Minn. 40, 216 N.W. 326 (1927).

We determine whether a property is tax exempt under Minn.Stat. § 272.02, subd 1(5), using a two part test: does a church own the property, and is the property used for the purpose for which the tax exemption was created? However, a threshold question is whether the entity claiming the exemption is a "church" within the meaning of the statute. Our most recent consideration of this issue is *Ideal Life Church of Lake Elmo v. County of Washington,* 304 N.W.2d 308, 313–15 (Minn.1981), where we said that the determination of whether an organization is a "church" depends upon an analysis of all the facts and circumstances of each particular case. In that case, we identified the following factors to be considered in making the determination:

1. whether "the preconceived and primary, if not the sole, motive" behind the organization was tax avoidance in favor of the private individuals who control the corporation, * * *;

2. whether the doctrines and beliefs of the organization are intentionally vague and non-binding upon its members;

3. whether the members of the organization freely continue to practice other religions;

4. whether the organization has formally trained or ordained clergy;

5. whether the organization has sacraments, rituals, education courses or literature of its own.

6. whether the organization has a liturgy, other than simple meetings which resemble mere social gatherings or discussion groups rather than religious worship;

7. whether the organization is an institution which advances religion as a way of life for all men;

8. whether the organization requires a belief in any Supreme Being or beings.

*Id.* at 315.

Justice Wahl concurred in the holding of *Ideal Life,* that the entity at issue was not a "church" for tax purposes, but rejected the "defined criteria" approach for a more subjective approach focusing on the sincerity of belief of the organization's members. She said:

> The goal is not to show that a particular activity is not a church but 'that the beliefs asserted to be religious are not held in good faith by those asserting them, and that forms of religious organization were erected for the sole purpose of cloaking a secular enterprise with the legal protections of religion.' *Founding Church of Scientology v. United States,* 409 F.2d 1146, 1162 (D.C.Cir.1969), *cert. denied,* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969). * * * Although determining the sincerity of belief is a most sensitive undertaking, it has been accepted as a means of showing that an organization is entitled to tax exempt status. *Valente v. Larson,* 637 F.2d 562 (8th Cir.1981) * * *.

*Id.* at 318.

Similarly the Wisconsin Supreme Court has rejected the objective criteria of *Ideal Life,* relying instead upon a determination of sincerity of belief, based upon all of the evidence presented by the organization. *Waushara County v. Graf,* 480 N.W.2d 16 (Wis.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 269, 121 L.Ed.2d 198 (1992). The court in *Waushara* identified the potential risks of assessing the *bona fides* of organizations seeking tax exempt status as a church:

> The myriad potential forms of sincere religious belief and worship militate against the establishment of 'traditional' criteria by which to assess new or nontraditional beliefs.

*Id.* at 22–23, n. 6.[4]

A test looking to sincerity of religious belief in the context of evaluating requests for

4. The tax court, in its analysis in this matter, rejected the application of the *Ideal Life* factors

"conscientious objector" status under section 6(j) of the Universal Military Training and Service Act (the "draft") was adopted in *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1965). There the Court said:

> [W]e hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact * * *.

*Id.*[5]

■ While we do not overrule *Ideal Life*, we hold that the test for determining whether an organization is properly considered a church for tax purposes is a subjective one, focusing on the sincerity of belief and taking into account evidence on issues such as those articulated in *Ideal Life*.[6] By combining these two approaches, we avoid the risk of favoring religious bodies which are similar to mainline churches, and disfavoring others which may be equally sincere, but are non-traditional in their organization, their theology or their methods of worship. This approach also seems most consistent with the teaching of the Supreme Court in *Walz v. Tax Comm'n*, 397 U.S. 664, 677, 90 S.Ct. 1409, 1415, 25 L.Ed.2d 697 (1970). There the Court said that tax exemption of churches and church properties does not violate the Establishment Clause of the Free Exercise Clause of the First Amendment so long as under the state laws exempting the church property "[no religion] was favored over others and none suffered interference." *Id.* at 677, 90 S.Ct. at 1415. A test which adheres to a rigid enumeration of organizational characteristics may run afoul of the First Amendment prohibitions of state actions which favor one denomination, sect or independent religion over another.

■ Applying the subjective test to the facts in this matter, we hold that the AFC is not a church within the meaning of Minn. Stat. § 272.02, subd. 1(5) and Minnesota Constitution Article 10, Section 1. Upon a close examination of the facts, we are persuaded that the principal motivation of Page was tax minimization. The evidence adduced at trial supported the tax court's findings that:

> 1) most of the financial contributions to the AFC came from Page, and most of his income came from the AFC;
>
> 2) Page was the primary beneficiary of AFC's financial actions, in that checks drawn on AFC's account were primarily for items such as mortgage payments on the subject property, insurance, fuel and maintenance of automobiles, furniture, food, utilities, airplane expenses and attorney's fees for tax litigation;
>
> 3) Page and his wife dominated the meetings of the AFC board of trustees, and the principal topic at board meetings was the progress of tax litigation.

All of these facts raise significant question about the sincerity of the AFC's asserted religious function. Further, the court takes

---

and relied instead on the "sincerity of belief" test of *Waushara*.

**5.** A similar approach was used in *Christian Jew Found. v. State*, 653 S.W.2d 607 (Tex.App.1983) and *Unification Church v. Immigration and Naturalization Serv.*, 547 F.Supp. 623 (D.D.C.1982).

**6.** In determining whether a legal entity is a church for taxation purposes the IRS and some courts have considered the following characteristics:

1. a distinct legal existence;
2. a recognized creed and form of worship;
3. a definite and distinct ecclesiastical government;
4. a formal code of doctrine and discipline;
5. a distinct religious history;
6. a membership not associated with any other church or denomination;
7. an organization of ordained ministers;
8. a prescribed course of study for ordained ministers;
9. a literature of its own;
10. established places of worship;
11. regular congregations;
12. regular religious services;
13. sunday schools for religious instruction of the young, and
14. schools for the preparation of its ministers.

*Young Life Campaign v. Patino*, 122 Cal.App.3d 559, 176 Cal.Rptr. 23, 35 (1981); Kurtz, Jerome, "Difficult Definitional Problems In Tax Administration: Religion and Race," 23 Cath.Law. 301, 304 (1978); IRS Publication No. 1828, "Tax Guide For Churches and Other Religious Organizations," (Draft July 26, 1994). These factors may be helpful to courts considering this issue.

note of the extensive history of tax litigation involving these same parties, and indeed the same piece of property.

Finally, we also note that while AFC meets several of the criteria articulated in *Ideal Life*, absence of certain other characteristics undermines an assertion of sincerity of belief by Page. In particular, we note the lack of association with other congregations, the lack of a prescribed course of study for ordained ministers and the dearth of sacrament, ritual, liturgy or recognized form of worship. While Page has taken some steps to fit his fraudulently motivated organization into the *Ideal Life* factors, an analysis of all the facts and circumstances of this case leads us to conclude that the beliefs asserted to be religious by Page and Frayne are not held in good faith. Page used the AFC as a device to recharacterize his non-church salary and personal service income from taxable to nontaxable, and thus we do not attach tax exempt status to the property at issue.

■ Next we turn to AFC's argument that the tax court improperly dismissed its counterclaim against the state for negligence of the District Court Administrator. Minn.Stat. § 279.15 (1989) provides:

> Any person having any estate, right, title, or interest in, or lien upon, any parcel of land embraced in such list as published * * * may file with the court administrator of the district court an answer setting forth a defense or objection to the tax or penalty against such parcel of land.

The answer is limited to answers relating to taxes levied against the taxpayer. *See State v. Elam*, 250 Minn. 274, 281–282, 84 N.W.2d 227, 232 (1957).

In this case, AFC's counterclaim did not relate to the validity of the tax; instead, it is a counterclaim in negligence alleging slander and violations of Minn.Stat. §§ 609.43 and 549.21, for actions associated with the previously dismissed forfeiture action. We concur with the tax court that the relevant statutory provisions, along with *Elam*, limit answers in a Chapter 279 proceeding to issues of exemption, payment or jurisdictional defect. The tax court properly dismissed the counterclaim.

AFC also raises the issue of whether the tax court judge erred in not recusing himself from the case. In support of its motion, AFC referenced a general policy memorandum signed by the tax court judge during the period he served as Commissioner of the Minnesota Department of Revenue.[7] This memorandum was distributed to all county assessors and later introduced into evidence in *America Fundamentalist Church v. County of Hennepin*, 1983 WL 1050 (Minn.T.C. 1983), in support of the state's position seeking to deny tax exemption to AFC.

■ After careful consideration the tax court judge denied the motion and we agree. Minn.R.Civ.P. 63.02, adopted by Tax Court Procedural Rule 8600.0300, requires that:

> No judge shall sit in any case if that judge is interested in its determination or if that judge might be excluded for bias from acting therein as a juror. If there is no other judge of the district who is qualified, or if there is only one judge of the district, such judge shall forthwith notify the chief justice of the supreme court of that judge's disqualification.

The controlling principle is that no judge, when other judges are available, ought ever to try the cause of any citizen, *even though he be entirely free from bias in fact*, if circumstances have arisen which give a bona fide appearance of bias to litigants. *Wiede-*

---

7. The memorandum states:

Recently there has been a dramatic increase in the number of individuals seeking exemption from property and other taxes based on a claim that they have organized new churches and deeded their property to the churches. Many of the individuals make no secret of the fact they have organized the churches and deeded their property to the churches for the sole purpose of avoiding taxes.

We wish to remind assessors that an exemption is not extended to a particular piece of property merely because it is owned by an organization which calls itself a "church." It is the nature of the use of the property and its reasonable relation to the accomplishment of the objectives of the church that form the basis for the exemption. It is obvious that if the sole purpose of the church is tax avoidance, that it may not fall within the constitutional protections afforded churches and church property or qualify for exemption.

*mann v. Wiedemann,* 228 Minn. 174, 36 N.W.2d 810 (1949); *see also Payne v. Lee,* 222 Minn. 269, 24 N.W.2d 259 (1946). Here, the tax court judge's memorandum makes clear that the policy statement was a general one, not directed at AFC. Further, AFC's counsel agreed that the memorandum was correct in its general policy statements. The tax court judge also noted that he did not prepare the memorandum, but merely signed it as a routine administrative matter. The role of the tax court judge with regard to the policy memorandum was essentially ministerial in nature, was not in any way associated with the taxpayer in this matter and does not indicate bias. The decision with regard to recusal was not improper.

Finally, we deal with a discovery issue raised by AFC. At trial respondent introduced certain documents including Page's tax returns, marriage license application, marriage certificate and a transcript of Page's testimony as an expert witness in a criminal trial. We find no merit in AFC's argument that these documents should have been provided prior to trial in response to document production requests.

Accordingly, the decision of the tax court is affirmed.